THE PEOPLE OF THE STATE OF NEW YORK ex rel. ERIE RAILROAD COMPANY, Relator, *v.* THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, SECOND DISTRICT, Defendant.

Third Department, December 28, 1916.

Railroad — authority of Public Service Commission to control operation of side track constructed on property of shipper — when operation of side track not a mere incident to delivery.

The Public Service Commission, under section 27 of the Public Service Commissions Law, has no authority over a side track which had been maintained by a railroad on the property of a shipper for several years without any express agreement, and cannot control or modify an agreement between the parties limiting liability for injury to the property and to the officers and employees of the shipper.

Where a substantial question exists as to the possibility of liability arising from accidents to the property of the shipper, and also to the persons of its numerous employees by reason of the operation of such side track, and such question is deemed by both parties of sufficient importance to justify an investigation, and the Commission also considers such question of sufficient importance to make it an essential feature of its order, it cannot be said that the operation of the side track is a mere incident to delivery.

KELLOGG, P. J., and WOODWARD, J., dissented, with opinion.

CERTIORARI issued out of the Supreme Court and attested on the 8th day of July, 1915, directed to the Public Service Commission, Second District, of the State of New York, commanding it to certify and return to the office of the clerk of the county of Albany all and singular its proceedings had in

requiring the relator to operate a switch connection and side track on the property of the Lancaster Machine and Knife Works.

*Lewis E. Carr*, for the relator.

*Ledyard P. Hale*, for the Public Service Commission.

COCHRANE, J.:

The Lancaster Machine and Knife Works owns and operates a manufacturing plant about one-fourth of a mile easterly from the station of the relator at Lancaster, N. Y., and adjacent to its railroad. Prior to the year 1896, when the machine and knife works became the owner of its said premises, a side track was constructed from the main track of the relator to the factory of the machine and knife works with a switch connection with said main track, and such side track has been continuously operated since the year 1896 by the relator in the transportation of freight for the machine and knife works. It does not appear by whom or under what circumstances the side track was constructed. It is 479 feet in length from the switch connection. It does not clearly appear how much of this side track is on the property of the machine and knife works, but it is stated in the brief of the counsel for the Public Service Commission that it is 220 feet long after leaving the relator's right of way.

The order of the Commission complained of recites that there has been no express agreement concerning the operation and maintenance of the track and switch connection and that the relator has continuously operated the same, moving cars thereon for the benefit of the machine and knife works.

The cause of the present controversy was that the relator finally exacted of the machine and knife works an agreement relating to the future operation of the side track, which agreement contained a provision that the machine and knife works would assume certain risks of injury to its property and to the persons of its officers and employees by reason of the operation of said side track by the relator and threatened to discontinue the operation of the side track unless such agreement was accepted by the machine and knife works. The Commission

held that such provision in the agreement was unreasonable and ordered that the relator might tender the machine and knife works the proposed agreement modified as to the risks which were to be assumed by it and held that until such agreement be tendered and until the machine and knife works should fail or refuse to execute the same, the relator should continue to operate such switch connection and side track as heretofore and that if the machine and knife works should fail or refuse to execute such modified agreement within fifteen days the relator might then discontinue the switch connection and operation of the side track.    This order or determination of the Commission is now before this court for review.

It is the contention of the relator that the Commission is without power to order the operation by a railroad company of a side track not constructed on its own property.    If that contention be well founded the operation of this side track in question is necessarily a matter of private agreement between the parties and the Commission had no right to assume the regulation of the proposed agreement between the relator and the machine and knife works and to order the relator to continue the operation of the side track on any terms or conditions whatever.

The power of the Commission to make such an order must be found in the statute, and the only statute which it is claimed confers such power is section 27 of the Public Service Commissions Law (Consol. Laws, chap. 48; Laws of 1910, chap. 480) which provides as follows: "A railroad corporation, upon the application of any shipper tendering traffic for transportation, shall construct, maintain and operate upon reasonable terms a switch connection or connections with a lateral line of railroad or private side-track owned, operated or controlled by such shipper, and shall, upon the application of any shipper, provide upon its own property a side-track and switch connection with its line of railroad, whenever such side-track and switch connection is reasonably practicable, can be put in with safety and the business therefor is sufficient to justify the same."

Under this statute all that a railroad company can be required to do with reference to a private side track of a shipper is to construct, maintain and operate a proper switch connection or con-

nections therewith. The operation of such side track cannot be exacted of the railroad. This is emphasized by the subsequent provision in the statute that a side track for the benefit of a shipper may be required under certain circumstances to be constructed by a railroad company " upon its own property." The reason for the distinction between the side track of a shipper and one of a railroad is a sound one and was manifestly intended by the Legislature for reasons to it satisfactory. This controversy illustrates the ground of the distinction and emphasizes its importance. A railroad company cannot control the property of the shipper and if it operates a railroad on the property of the latter it is powerless to take such precautionary measures or establish such rules and regulations as it may think advisable to minimize the possibility of accident and lessen its liability therefor. This side track in question being on the property of the machine and knife works is not within the control of the railroad company and accidents and liabilities may arise which could be obviated if the railroad company had the sole control and possession thereof.

This question was in a measure involved in *People ex rel. Long Island R. R. Co.* v. *Pub. Serv. Comm.* (170 App. Div. 429), in which Mr. Justice LAUGHLIN, after calling attention to the fact that in other jurisdictions it has been held that a railroad company may be required to construct sidings on private property, observes that the statutory provisions in such jurisdictions are much broader than those of our statutes, and continues as follows: " The learned counsel for the Public Service Commission, appreciating that the express provisions of section 27 of the Public Service Commissions Law do not authorize the Commission to require the railroad company to do anything beyond the line of its own property, attempts to sustain the action of the Commission under a general provision of section 4 of the Public Service Commissions Law, which reads as follows: ' There shall be a public service commission for each district, and each commission shall possess the powers and duties hereinafter specified, and also all powers necessary or proper to enable it to carry out the purposes of this chapter.' We are of opinion, however, that said section 27, construed in the light of said section 4, does not show that the Legislature intended to

empower the Commission to require the railroad company to do anything that could not be done on its own property."

There may be cases perhaps where proper or reasonable delivery of a car of freight as an incident to the termination of the transportation may involve the placing of such car for a short space beyond the line of the railroad right of way. But the present controversy involves more than that. Where as here a substantial question exists as to the possibility of liability arising from accidents to the property of the shipper and also to the persons of its numerous employees by reason of the operation of such side track and such question is deemed by both parties of sufficient importance to justify an investigation and the Commission also considers such question of sufficient importance to make it an essential feature of its order, it cannot be said that the operation of such a side track is a mere incident to delivery.

It is claimed by the learned counsel for the Commission that the determination in question is justified by the recent case of *N. Y. C. & H. R. R. R. Co.* v. *General El. Co.* (219 N. Y. 227). There is nothing in the opinion in that case which militates against the views here expressed. That case involved the validity of an agreement for the operation of cars within the plant of a vastly intricate and complicated manufacturing system, and what was there said which is claimed to bear on the present case was said incidentally with reference to the fact that a railroad company may operate switches or spurs or side tracks but without any reference whatever to the question as to whether such operation is voluntary or compulsory and that is the point here. This relator, for instance, has voluntarily operated this side track for twenty years or more and its right to do so is unquestioned, but the question now arises as to its duty to do so and as to the power of the Commission under section 27 of the Public Service Commissions Law to require such operation. The meaning or effect of said section 27 or the powers of the Commission thereunder was not involved or considered in the case cited.

After reaching the conclusion for the reasons stated that the determination of the Commission is erroneous, it is unnecessary to consider the other reasons urged against it by the relator.

The determination should be annulled, with fifty dollars costs and disbursements, and the matter remitted to the Commission.

All concurred, except KELLOGG, P. J., who dissented in an opinion in which WOODWARD, J., concurred.

KELLOGG, P. J. (dissenting):

The knife works has occupied its plant since 1896. When it took possession it found the spur track connecting its plant with the railroad track, and deliveries of cars were being made by the company at the plant as a part of the transportation. That such practice was reasonable and customary would, therefore, seem to be beyond question. It is a matter of common knowledge that it is the same kind of service that is being furnished through the country to every plant of any considerable importance. With reference to when delivery at a plant is made CARDOZO, J., wrote in *N. Y. C. & H. R. R. R. Co.* v. *General El. Co.* (219 N. Y. 227, 235): "In the nature of things no inflexible formula can furnish a solution of that problem. The limits of place within which delivery is due, will vary with varying conditions (*Mitchell Coal & Coke Co.* v. *Penn. R. R. Co.*, 230 U. S. 247, 263). All that we can safely say is that there must be such a delivery as is customary and reasonable. There was a time, before the days of railroads, when a carrier by land was expected to make delivery at the consignee's home or place of business. That was because he could go there with his wagons (*Fenner* v. *Buffalo & State Line R. R. Co.*, 44 N. Y. 505, 510). With the days of railroads, delivery came to be expected at freight houses or other terminals. They are still the place of delivery where the factories and warehouses of shippers and consignees do not connect with the tracks. In our own time, however, private sidings have become common, and freight is carried over them between the railroad and the plant. Such carriage is commonly a part of the work of transportation (*Vincent* v. *Chicago & Alton R. R. Co.*, 49 Ill. 33; *Coe* v. *L. & N. R. Co.*, 3 Fed. Rep. 775). In most cases the distances are short and the carrier's burden remains substantially the same whether the cars are left upon the siding close to the main tracks or hauled along the siding until they

reach the plant.   In such circumstances it may be said with reason that delivery at the plant means delivery at the platform for loading and unloading.   The practice of hauling cars to points along the spur convenient to shipper or consignee is known as 'spotting' and is commonly and fairly regarded as part of the work of carriage."

We conclude, therefore, that the delivery of a carload of freight at, or the taking of it from, the platform on the spur track at the knife works, is a part of the transportation for which the company is paid and which it is its duty to perform. That duty, until this controversy arose, has been recognized. We do not understand that the company now questions the duty to deliver, but seeks to make the delivery conditional upon certain exemptions which a common carrier has not ordinarily the right to exact.   Of course, if the spur track becomes dangerous and unfit for use, another question arises which then must be met.   The question here is the power of the Commission to require the company to operate such spur track without imposing conditions which seem to the Commission to be unusual and unreasonable.   It is not disputed that in some respects the service is special, and that a proper agreement covering it and providing for the maintenance of the spur may be made.   Whether the agreement in terms is proper or improper is not for us to determine; that rested in the sound discretion of the Commission, and we are not to review that discretion when we conclude that it has acted fairly within its powers.   I favor an affirmance of the order.

WOODWARD, J., concurred.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the Commission.