(No. 10972.—Judgment affirmed.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* J. S. Cameron, Appellee, *vs.* THE LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Opinion filed February 21, 1917—Rehearing denied April 4, 1917.*

1. PUBLIC UTILITIES—*when railroad company may be compelled to build a spur-track to elevator or other industry adjacent to its right of way.* Even though an industry is located adjacent to the right of way of a railroad company, making it unnecessary to construct a track from the industry to the right of way, as provided in section 45 of the Public Utilities act, the railroad company may nevertheless be compelled, if the business justifies the expense, to build a spur-track to such industry, provided the hazard of operating the railroad is not materially increased.

2. SAME—*rights of railroad company and owner of industry as to constructing spur-track are relative.* While a railroad company cannot be compelled to construct a spur-track to a point arbitrarily selected by the owner of an industry adjacent to the right of way without regard to the questions of increased hazard of operation and the amount of prospective business, neither can the company arbitrarily refuse to construct such a track upon such reasonable terms as may be prescribed by the Public Utilities Commission.

3. SAME—*when railroad company cannot claim order of commission is not due process of law.* Where a railroad company is notified of the hearing before the Public Utilities Commission on a complaint filed with the commission and appears and participates in such hearing, it cannot claim that the order issued by such board after such hearing is not due process of law.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

GEORGE B. GILLESPIE, (JOHN B. COCKRUM, and GIL- LESPIE & FITZGERALD, of counsel,) for appellant.

SCHNEIDER & SCHNEIDER, for appellee.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellee, J. S. Cameron, for some twenty-five years prior to May, 1915, was the owner and engaged in operating a grain elevator and coal yards situated on the north side of the railroad of appellant at Elliott, in Ford county. The elevator was built partly upon the right of way of appellant and partly upon ground owned by appellee adjoining the right of way. There had been a spur-track connecting this elevator with the main line of appellant's railroad for some forty years. The portion of the right of way occupied by the elevator was leased by appellant to appellee, the lease containing a clause that the same might be terminated by appellant on giving thirty days' notice. The rent due under the lease had been paid in advance to February 28, 1916. The railroad company has a single line of main track running east and west through Elliott and crossing Main street, which runs north and south. The depot of appellant is north of the track and just west of Main street. The elevator of appellee is about 350 feet west of Main street. South of the main track is a side-track about 1276 feet long, which Main street crosses near the middle. North of the main track is another side-track or passing track, beginning a short distance east of Main street and extending further east about 2511 feet. Both these side-tracks are connected with the main track by switches at each end. The spur- track, which prior to May, 1915, ran to appellee's elevator, had a switch connection with the main track at a point about

750 feet west of Main street and extended eastward on the north side of the main track a distance of about 603 feet. The removal of this spur-track in May, 1915, is the ground of the petitioner's complaint. On May 15, 1915, the elevator was burned, and on June 15, 1915, appellant served notice on appellee that it had elected to cancel the lease and that appellee remove from the portion of the right of way occupied by him, and it afterwards tendered him the proportional amount of rent for the unexpired portion of the lease, which had been paid in advance. Notwithstanding the fire, appellee continued to do business at the same place, but after the elevator burned was compelled to load the cars by hand. He also continued in the coal business. About ten days after the fire appellant gave notice that it intended to remove the switch track which led to appellee's place of business, and three days afterwards it caused said track to be torn up and removed.

On June 25, 1915, appellee filed his petition with the State Public Utilities Commission, setting up the foregoing facts and alleging that he had some large corn-cribs and coal-bins near his elevator on his own land and the taking up of the switch track had caused him great damage and that he was unable to continue his business with the said switch track taken out; that he proposed to build an elevator on his own premises immediately adjacent to the place where the old building stood, and that it would be necessary that he have the use of the switch track; that officers of the railroad company had insisted that he build an elevator on the south side of the track and on their right of way, which he refused to do because the railroad company could not lawfully lease such ground, Sherill P. Bushnell, who had conveyed to the railroad company the right of way, having retained the right and privilege to use any part of said right of way up to the outer side of the tracks, free of expense, for a warehouse or other purposes for the lumber and coal trade. Appellee protested against the removal of

said switch, and it was the prayer of his petition that the utilities commission enter an order directing said company to replace said switch.

On July 6, 1915, appellant filed its answer to the petition, alleging that appellee had no vested right in any particular location for the construction of an elevator or that the relations heretofore existing between appellee and appellant gave the former any right to maintain or have located an elevator at any particular point on its line of railway; denying that it was necessary for appellee to construct the elevator at the point he had chosen or that the appellant was bound by the laws of the State of Illinois to maintain a track to the elevator where it was located, or that he had the right to select a location for the elevator without regard to the convenience, safety and accommodation of the public; denying that appellant is without power to lease lands for the construction of an elevator on the south side of its right of way, and denying that appellee is entitled to the relief prayed.

Thereafter the matter was referred to one of the officers appointed by the commission. The parties were notified and a full hearing was had, the evidence of the respective parties was heard, the case was argued and submitted, and on December 2, 1915, the order of the commission was entered, reciting the foregoing facts and other matters shown by the evidence, among others that appellee in the preceding ten years had paid the railroad for grain shipped between $18,000 and $25,000, and showing the number of cars shipped by him from 1906 to 1912, inclusive; that in addition he had received shipments of coal and other freight over the switch in question; that appellee claimed that in a conversation with the general manager of the appellant railroad, held soon after his elevator burned, he said he intended to re-build on his own ground as soon as the insurance was adjusted, and he soon after did commence to re-build said elevator; that the chief reason given by the

company for the removal of the switch track was a desire to eliminate as an element of danger one of the five main-track switches in Elliott; that the railroad station at Elliott had also been destroyed by fire and the company proposed to build a new station with a more extensive platform, which might require a shortening of the spur or switch track but apparently did not necessitate its removal entirely, as there was still room enough on the spur-track to serve the petitioner's elevator; that from the testimony of the general manager of the road it appeared that if the spur-track were re-laid on the north line of the right of way it would not imperil the station platform, and that the elimination of the main-track switch could be accomplished by laying a spur-track to the elevator from the passing track instead of from the main track. The order found from the evidence that the removal of the spur or switch track was not determined upon because of the hazard arising from the main-track switch or by the requirements of the new station; that the removal of the spur-track was not required by any necessity arising from the operation of the railroad or by any hazard thereby occasioned and that such removal was not justified; that the restoration of the spur-track will provide a connection from said railroad to the elevator and premises of the petitioner for the purpose of receiving and delivering freight thereby; that such connection is reasonably practicable and can be restored and used without materially increasing the hazard of the operation of said railroad, and that the business which may reasonably be expected to be received by said railroad company over such connection is sufficient to justify the expense of such connection to the said railroad company, and that applicant is entitled to have the same provided for him. It was therefore ordered that appellant provide a connection or spur from its main track at Elliott along its right of way, following the location of the former spur-track which was removed, from the western terminus of said former spur-track to a point 275 feet west

of the west line of Main street, in Elliott, provided, however, that said railroad company may, at its option, locate said spur-track farther north upon its right of way, or may, in lieu thereof, lead a spur-track from its present passing track along the northerly side of its right of way, extending westerly to a point one car-length beyond the present location of the elevator of petitioner at Elliott, and that the spur-track, when so constructed, shall be maintained by said railroad company and used for the purpose of receiving and delivering freight thereby; that it commence the construction of such track within thirty days from the date of the service upon it of a certified copy of said order and proceed with reasonable dispatch to complete the same. The appellant appealed from the order of the commission to the circuit court of Sangamon county, and on a hearing in that court the finding and order of the utilities commission were affirmed, and appellant has prosecuted a further appeal to this court.

It is contended by the railroad company that the complainant is not entitled to have the side-track restored in accordance with the prayer of his petition, for the reasons that the proof does not bring the complainant's case within the terms of the constitution and statute entitling him to an elevator connection; that the proof does not show that the connection is reasonably practicable and can be installed and used without materially increasing the hazard of operation of the railroad with which the connection is sought; that to require the railroad company to build a spur-track for the sole accommodation of the petitioner and maintain the same at its expense would be a taking of the property of the railroad company without due process of law and deny it the equal protection of the law and would be in conflict with both the State and Federal constitutions. In brief, it is the contention of appellant, and the argument of its counsel is predicated upon the theory, that appellee, under the facts of the case, is in the position of a prospective ship-

per who has located an elevator adjacent to the right of way of a railroad company and is seeking arbitrarily to compel the railroad company to provide him with a switch track to such elevator. In support of the argument it is claimed that section 5 of article 13 of the constitution of 1870, which provides that all railroad companies shall permit connections to be made with their tracks, and section 45 of the Public Utilities act, applying to side-track connections, apply to the case. From the foregoing statement of facts, however, and the evidence in the record, about which there is no controversy, an entirely different case is made out. The petition of appellee in this case was to require the railroad company to restore the track which the petitioner claimed it had unlawfully torn up, and the facts in the case are nearly like those in *Chicago and Alton Railroad Co.* v. *Suffern*, 129 Ill. 274. In that case a railway company allowed the owners of a coal mine to build a switch from its main track to the mine and to use the same for eight years in shipping coal from their mine, when without right or authority it cut the switch loose from its track so that its cars could not reach such mine, and thereby refused any longer to grant the permission required by the constitution. It was held that the company was guilty of the violation of a public duty, and that *mandamus* would lie to compel it to restore such connection with the switch and to furnish cars on the switch for the shipping of coal from the mine, the same as before the severance. In that case it was also held that while it may be that the railroad company was originally vested with such discretionary power as to authorize it to direct in what particular manner the connection should be made with its main track, the discretion of the company in this respect was exhausted after the completion of the switch and its use, without objection, for a number of years. There were other questions involved in the case and the decision was by a divided court, but there was no controversy as to the point above mentioned. The

proceeding in that case was different, it being a suit in *mandamus,* but the jurisdiction of the utilities commission to hear and determine the matters in controversy has not been questioned in this case nor its authority to enter the order complained of, the only question raised being as to the right of appellee, under the law, to have the relief granted.

Section 5 of article 13 of the constitution of ·1870 provides that all railroad companies receiving or transporting grain in bulk, or otherwise, shall deliver the same to any consignee thereof or to any elevator or public warehouse to which it may be consigned, provided such consignee's elevator or public warehouse can be reached by any track owned, leased or used by such railroad company, and that all railroad companies shall permit connections to be made with their tracks, so that any such consignee and any such public warehouse, coal bank or coal yard may be reached by the cars of such railway. Section 45 of the Public Utilities act (Hurd's Stat. 1916, p. 2034,) provides, among other things, that every railroad company, upon the application of any person being a shipper or receiver or contemplated shipper for a connection between the railroad of such railroad company and any existing or contemplated track of such corporation or person, shall make such connection and provide such switches and tracks as may be necessary for that purpose and deliver and receive cars thereover, provided such connection is reasonably practicable and can be installed and used without materially increasing the hazard or expense of the railroad with which such connection is sought, and that the business which may reasonably be expected to be received by such railroad company over such connection is sufficient to justify the expense of such. connection to such railroad company. It is further ·provided in that section that where application has been made, under such circumstances, for a connection or spur and the railroad company has refused to provide such connection or spur, and the commission finds that the applicant is entitled

to have the same provided for him, the commission shall make an order providing for such connection or spur and the maintenance and use of the same upon reasonable terms, which the commission shall have the power to prescribe. It is true that the exact situation provided for in this section is that where the owner of an industry which may be situated some distance from the right of way of a railroad builds at his own expense a track to the right of way of such railway the railroad company may be required to make a connection. If, however, the owner of an industry, or a shipper, as in the case at bar, is located adjacent to the right of way, so that it is unnecessary to build a track to the right of way, we see no reason why the railroad company should not be compelled, under the provisions of section 45, to put a switch track to such place and make a connection with its main line and ship cars thereover.

It is not the purpose of the law to compel a railroad company, under any and all circumstances, to provide at its own expense a switch track to such place as a shipper may arbitrarily select. The law provides what the shipper and the railroad company shall do, and such matters as the selection of a site, the adjustment of the cost and maintenance of the switch track, and such other matters as usually arise, should be settled by agreement of the parties. If they cannot agree, an application can be made to the utilities commission, which shall proceed to hear the controversy and examine the premises, if necessary, and make such order as it deems proper under the circumstances. While a railroad company cannot be compelled at its own expense to lay a switch to a point arbitrarily selected by a shipper, where such switch and connection would not be reasonably practicable or would materially increase the hazard of the operation of the railroad or the prospective business would not justify the expense of such connection, it is equally true that the company cannot arbitrarily refuse to furnish such switch and connection upon such terms as the commission

may prescribe as to cost and maintenance, where such connection is reasonably practicable and can be installed and used without materially increasing the hazard of the operation of the railroad and where the business that may reasonably be expected to be received by such company over such connection is sufficient to justify the expense.

It is claimed that the order in this case contravenes the fourteenth amendment to the constitution of the United States, in that it compels the railroad company to put in this switch or spur-track, and is, in effect, taking its property without due process of law. The authorities cited in support of this contention involved the construction of statutes very different from the statute in question. Under our statute the commission may fix and adjust the cost of such switch track and its maintenance between the parties. No claim was made by appellant on the hearing, and the question was not in issue, as to whether appellee should pay any part of the cost of installation and maintenance of the switch. Where a railroad company was notified of a hearing before the board of railroad commissioners on a complaint filed with the board and appeared and participated in such hearing, it cannot claim that an order issued by such board after such hearing was not due process of law. *State* v. *Missouri Pacific Railway Co.* 76 Kan. 467. To the same effect are *State of Washington* v. *Fairchild*, 224 U. S. 511, and *Wisconsin, Minnesota and Pacific Railroad Co.* v. *Jacobson*, 179 id. 287.

Appellee was shipping in the neighborhood of two hundred cars of grain a year over this track and had paid appellant in freights from $18,000 to $25,000 during part of the time that he had been in business. Furthermore, the primary question involved was that of appellant having improperly removed said track. If the railroad company had left it alone it would not be at the expense of replacing it. After a full hearing on the evidence the commission found that it would be entirely feasible to restore the track or put

it a few feet farther north along the right of way or make a similar connection from the passing track, and that it would not interfere with the operation of the railroad or materially increase the hazard of operation of the railroad, and that the business reasonably expected would justify the expense of such track. Its order was affirmed by the circuit court. We have examined the evidence contained in the record and are unable to say that it does not justify the conclusion reached by the commission and the court below. It was practically conceded on the hearing that if the elevator had not been burned appellant would not have removed the track, and it had maintained the same for over forty years without finding that it was dangerous or hazardous to the operation of the road.

For the reasons given, the judgment of the circuit court of Sangamon county affirming the order of the State Public Utilities Commission will be affirmed.

*Judgment affirmed.*