(No. 13642.—Judgment affirmed.)

THE PUBLIC UTILITIES COMMISSION *ex rel.* Paul Kuhn & Co., Appellee, *vs.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellant.

*Opinion filed February 15, 1921.*

1. PUBLIC UTILITIES—*when railroad company cannot refuse to extend a switch-track to grain elevator.* An order of the Public Utilities Commission, under section 45 of the Public Utilities act, requiring a railroad company to extend a side-track to a grain elevator, cannot be disregarded by the company upon the ground that the switch connection will be for mere private use, where the side-track as extended can be used for a general team-track in addition to serving the elevator. (*Public Utilities Com.* v. *Lake Erie and Western Railroad Co.* 277 Ill. 574, followed.)

2. SAME—*railroad company cannot impose other than statutory conditions for making side-track connection.* Where the circumstances are such as to justify an order of the Public Utilities Commission for an extension of a side-track to a grain elevator, the railroad company cannot refuse to obey the order because the owner declines to execute a contract with the company imposing other conditions than those provided in the statute.

296—33

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

GEORGE B. GILLESPIE, and GEORGE M. GILLESPIE, (L. J. HACKNEY, and STANLEY W. MERRELL, of counsel,) for appellant.

WILLIAM R. BACH, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Paul Kuhn, the appellee, is a buyer and shipper of grain under the name of Paul Kuhn & Co., at Snyder, in Clark county, Illinois, a regular station on the railway of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, the appellant. In September, 1916, negotiations were commenced between Kuhn and the railway company for the building of an elevator by him and a switch-track connection to the same, which resulted in an agreement of the railway company to change the location of an existing side-track and extend the same to a connection with an elevator to be built by Kuhn on his land adjoining the right of way. The extension to the elevator was to be at the expense of Kuhn, and during the negotiations he was informed he would be required to execute a side-track agreement, to which he made no objection, but the nature of the agreement or what it was to contain was not stated or determined. Kuhn built the elevator before the contemplated side-track agreement was executed, and afterward a draft of an agreement was presented to him, which he refused to execute because it contained conditions which were unreasonable and to which he had not assented, by which the railway company could discontinue the use of the track and remove the same at its pleasure and by which he would assume liability for negligence of the railway

company. Upon the refusal of Kuhn to execute the agreement the railway company refused to furnish the switch connection, and Kuhn applied to the Public Utilities Commission for an order requiring the railway company to furnish a connection with his elevator, as provided by section 45 of the act for the regulation of public utilities. (Laws of 1913, p. 460.) The railway company answered the petition, admitting that application for the connection had been made by Kuhn; alleging that the negotiations were upon the understanding that the side-track agreement would be executed, and the railway company was willing to give Kuhn the use of the side-track and carry out its agreement upon the execution of the side-track agreement; denying that Kuhn was entitled to a side-track connection upon other or different terms than the railway company conceded to other patrons, and denying the jurisdiction of the commission to give Kuhn the connection, because it would be for a private use and would be taking private property for a private use without due process of law and in violation of the fourteenth amendment to the Federal constitution. The commission heard evidence and ordered the connection made, and the railway company appealed to the circuit court of Sangamon county, where the order was affirmed, and this further appeal was prosecuted.

The errors assigned are presented in the brief for appellant under five heads, each one of which is based on the alleged fact that the connection would be for a private use, which is not the fact, as shown by the evidence and found by the commission. The side-track, when removed to the new location and extended, in addition to being used in the shipment of grain from the elevator, could be used, and probably would be used, for general team-track purposes. Every question of law under such a state of facts was decided in the case of *Public Utilities Com.* v. *Lake Erie and Western Railroad Co.* 277 Ill. 574, and the judgment was affirmed by the Supreme Court of the United States in

*Lake Erie and Western Railroad Co.* v. *Public Utilities Com.*
249 U. S. 422. · The Federal questions involved were disposed of in the same way by the Supreme Court of the
United States in *Chicago and Northwestern Railway Co.*
v. *Ochs,* 249 U. S. 416.

The only real difference between the parties arises from
the refusal of Kuhn to execute the contract containing provisions to which he objected. In the draft of the contract
presented to Kuhn the railway company was designated as
first party, and Paul Kuhn, sole owner and doing business
under the name of Paul Kuhn & Co., as second party, and
the provisions objected to are as follows:

"6. That the first party, its successors and assigns, shall
have the right, at any time after sixty (60) days' notice
·in writing to the second party, to discontinue use of said
track and· extension and remove all of same, and the second party shall, upon presentation of bill therefor, pay to
the first party the cost of the removal of the extension belonging to the second party.

"8. The second party hereby indemnifies and agrees to
save harmless the first party from any loss, damage or
injury by fire originating in or from the use of said track
and extension or any connecting track and affecting the
property or person of anyone upon the premises served by
said track and extension."

Concerning this difference, it is contended that· Kuhn
was not in a position to invoke the action of the commission to compel the railway company to furnish him a sidetrack because of his negotiations with the railway company, and it is clear that that position cannot be maintained.
The statute gave Kuhn a right to the connection upon conditions which existed and about which there was no controversy. The re-location of the switch-track was reasonably.
practicable, and it could be installed without materially increasing the hazard of the operation of the railroad. The

business which might reasonably be expected to be received over the connection was sufficient to justify making the connection, and Kuhn agreed to pay the entire expense of the location of the track. There was no element of estoppel against Kuhn, but, on the contrary, he was induced to erect his elevator upon a reasonable expectation of the connection. Having the right to the connection there was no consideration whatever for any agreement on his part to bargain away in advance the rights which the law gave him, and if he had made an agreement as claimed it could not be enforced. Kuhn testified that he had no knowledge whatever of the contents of the standard form of side-track contract when he made application for the switch-track, and he cannot be required to waive rights given him by the law or assume liabilities not imposed upon him by the law because other patrons of the railway were willing to waive their rights or assume the liabilities provided in the contract. A railway company cannot refuse to perform the duty enjoined upon it by the statute or annex any other condition than is therein provided. The provisions of the contract objected to by Kuhn authorized the railway company, upon sixty days' notice, to terminate the connection, discontinue the use of the track and remove the same on its own volition without fault or default of Kuhn, and he was also required to indemnify and save harmless the railway company from any loss, damage or injury by fire although due to the negligence of the railway company. He could not be required to execute such a contract in order to obtain the right secured to him by the statute.

The judgment is affirmed.        *Judgment affirmed.*