## Terminal Railroad Association of St. Louis, Appellant, v. Cain-Hurley Lumber Company, Appellee.

1. RAILROADS—*duty to construct service tracks extending beyond company property.* Neither by common law nor under Cahill's St. ch. 114, ¶¶ 158, 159, or Cahill's St. ch. 111a, ¶ 45, is it the duty of a common carrier by railroad to construct service tracks connecting with its main lines elsewhere than upon its own property.

2. RAILROADS—*validity of contract for extension of service track beyond company property, conditioned upon covenant to save rail-*

Terminal R. Ass'n of St. L. v. Cain-Hurley L. Co., 241 Ill. App. 364.

road harmless from loss due to fire communicated from such property. A common carrier by railroad, being under no legal obligation to construct a service track connecting with its main lines elsewhere than upon its own property, may lawfully condition its agreement to construct such a track upon property other than its own upon an undertaking by the beneficiary of such track to save the railroad company harmless from any loss resulting from injury or damage to the persons or property of others through fire communicated from the premises so served, such agreement being a good consideration and its exaction not contrary to public policy.

3. RAILROADS—right to enforce covenant exacted as condition of constructing service track where bill discloses conditions which would support order to construct without conditions. A covenant on the part of an owner of private property, in consideration of the construction by a railroad company of a service track upon such property, to save the company harmless from any loss due to fire communicated from such property, will be binding and enforceable notwithstanding it appears, from the averments of a bill to secure such enforcement, that the situation of the parties is such that on a hearing before the Public Utilities Commission the company could be compelled to construct such service track without right to exact such covenant.

Appeal by plaintiff from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1926. Reversed and remanded with directions. Opinion filed July 9, 1926.

T. M. PIERCE, J. L. HOWELL, KRAMER, KRAMER & CAMPBELL and RALPH F. LESEMANN, for appellant.

T. J. HOOLAN, MAURICE V. JOYCE and LOUIS P. ZERWECK, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

At the April, 1923, term of the circuit court of St. Clair county, an action in assumpsit was instituted by appellant against appellee. On motion of appellant, said cause was transferred to the equity side of said court.

The bill as finally amended charged that on September 5, 1912, the East St. Louis Belt Railway Com-

pany (designated in said contract as the "Railroad") entered into a contract with one Robert Abeles (designated as "Industry"), for the construction of a spur track from the main track of the "Railroad," to and upon certain premises owned by the "Industry," 50 feet of said track to be laid on the land of the "Railroad," about 60 feet across a highway known as "Bend Road," and about 590 feet on the premises of the "Industry." The "Railroad" was to construct the industrial track, and thereafter maintain and repair the same. It was to install, maintain and operate such interlocking work, signals, crossings, gates or other safety appliances which it deemed expedient, or which would be required by law. The "Industry" was to furnish and maintain a roadbed satisfactory to the railroad's engineer; was to obtain the necessary permits or ordinances for the construction, maintenance and operation of said track; was to drain and protect the lands, property and streets affected by said track; was to furnish at its own expense the necessary cross and switch ties required for the construction of the track, and upon completion of said track was to pay interest to the railroad at a specified rate on the current value of all materials and labor used in the construction of the same and was thereafter to pay the actual cost of maintaining the said track plus 10 per cent. The "Railroad" was to have the right to use the industrial track free of charge, provided that such use would not necessarily interfere with the business of the "Industry," and was also given the right to extend said track in order to provide track facilities for any individuals, partnerships or corporations that would furnish a roadbed for the same, and would pay their fair and equitable share of the construction cost of the track in question, which said sum was to go to the "Industry."

Paragraph 12 of said contract provided: "All cost occasioned by loss, damage or injury to property

Terminal R. Ass'n of St. L. v. Cain-Hurley L. Co., 241 Ill. App. 364.

or persons resulting in death, or otherwise, from fire however caused, or from water used in extinguishing the same upon the premises of the 'Industry,' shall be borne by it, and said 'Industry' shall fully indemnify and save harmless the 'Railroad' from all loss, damage or injury to the persons or the property of others from fire communicated from the premises of the 'Industry.' "

There were other provisions in said contract which it is not necessary to refer to at this time. The bill further charged that on the same day the contract was executed the interest of the East St. Louis Belt Railway Company was, with the consent of said Abeles, assigned and transferred to appellant, appellant to assume all obligations therein to be kept and performed by the East St. Louis Belt Railway Company. Said bill further alleged that on March 16, 1914, the interest of Abeles, with the consent of appellant, was assigned to the Cain-Hurley Lumber Company, a Missouri corporation, it to be bound by all the covenants and obligations to be kept and performed by Abeles.

Said bill further charged that on February 23, 1922, a fire originated on the premises of the "Industry" and was communicated therefrom to certain railroad cars and rolling stock belonging to others and in the possession and control of appellant, situated on said industrial track on the premises of the "Industry," which were thereby damaged and destroyed by said fire, "which said loss and damage to said cars and rolling stock amounted to the sum of $30,814.14"; that prior thereto appellant had entered into certain contracts with the owners of said cars and rolling stock, whereby it became liable to such owners for the loss and damage occasioned by said fire, and paid to them the amount above set forth.

Said bill further alleged that thereafter, on or about November 9, 1922, the Cain-Hurley Lumber Company of Missouri was dissolved and a corporation of the

same name, consisting of practically the same stockholders and officers, was organized under the laws of the State of Illinois, which said Illinois corporation took over the property and assets of said Missouri corporation; that said assets so taken over by said Illinois corporation were reasonably worth $60,000 in excess of the amount paid therefor, and that appellee, the Illinois corporation, took over a large amount of the assets of said Missouri corporation without paying any consideration therefor. Said bill prayed for an accounting, etc.

To said bill appellee filed a demurrer, and on hearing the demurrer was sustained by the court, and a decree entered dismissing said bill for want of equity. To reverse said decree, this appeal is prosecuted.

Counsel for appellee in their brief and argument state: "Appellee does not contend that the subject matter of the contract in question is illegal and that, therefore, the contract is void on grounds of public policy. But appellee does insist that the terms and provisions of section 12 of said contract by which the railroad seeks to make the industry indemnify and save it harmless from all loss, damage or injury to the property of others from fire, however caused, is without consideration, against public policy, contrary to law and illegal and void."

It is the contention of appellee that under the provisions of section 1 of "An Act requiring common carriers of freight to provide and maintain sidetracks and connections for shippers and receivers of freight," appellant was obligated to construct the spur in question and if it had refused, would have been compelled to do so under section 2 of said act. (Cahill's St. ch. 114, ¶¶ 158 and 159.)

On the other hand, counsel for appellant insists that under the provisions of the Warehouse Act [Cahill's St. ch. 114] above cited, it clearly appears that in no case can a railroad company be compelled to construct

a spur line beyond the limits of its own property; that, this being true, if another industry or business desires to connect with the lines of a railroad company, said railroad company and said industry would have the right to enter into a contract with reference thereto, with provisions of the character here complained of, and that the consideration therefor would be the doing by the railroad of something which under the law it could not have been compelled to do.

We are of the opinion and hold that the position of appellant in this connection is well taken. The contract in question provides that appellant railroad company shall construct and operate the industrial track on the property of the "Industry," and shall furnish the rails therefor. At common law, there was no duty on the part of a railroad company, in a case of this character, to provide a switch track connection between its main line and the premises of a person or corporation desiring the same. *Vincent v. Chicago & A. R. Co.,* 49 Ill. 33; *People v. Chicago & N. W. Ry. Co.,* 57 Ill. 436; 4 R. C. L. 680-681; 33 Cyc. 124; *Lake Shore & M. S. Ry. Co. v. Hoffert,* 40 Ill. App. 631.

The section of the Warehouse Act relied upon by appellee is as follows:

"Any railroad being a common carrier of freight, upon application of any shipper tendering or receiving freight or merchandise in carload lots, shall construct, maintain and operate, upon reasonable terms upon its own right of way at any regular station, a switch connection with any such shippers railroad track which may be constructed to connect with its railroad upon its right of way, where such connection is reasonably practicable and can be put in with safety and will furnish sufficient revenue business to such railroad company to justify the construction and maintenance of the same, and shall furnish cars for the movement of such traffic upon such switch upon its own rails to the best of its ability without discrimination

in favor of or against any such shipper." [Cahill's St. ch. 114, ¶ 158.]

An examination of this statute clearly discloses that the duty of building service tracks, imposed on railroad companies thereby, is limited to the construction of the same on their own property. It is not made the duty of a railroad company to construct service tracks for the benefit of others, beyond its own premises. This holding is supported by authorities in other States, where similar statutes have been under consideration. *New York Cent. & H. River R. Co. v. General Electric Co.*, 83 Misc. 529, 146 N. Y. Supp. 322; *Northwestern Warehouse Co. v. Oregon, R. & Nav. Co.*, 32 Wash. 218; *People v. Public Service Commission*, 176 App. Div. 28, 162 N. Y. Supp. 520; *Atchison, T. & S. F. R. Co. v. State*, 24 Okla. 616, 104 Pac. 908; *Northern Pac. R. Co. v. Railroad Commission of Washington*, 58 Wash. 360.

The law further is that a statute attempting to compel a railroad company to build a track beyond the line of its own property would not be valid or binding. *Missouri Pac. R. Co. v. Nebraska*, 217 U. S. 196; *New York Cent. & H. River R. Co. v. General Electric Co., supra;* 22 R. C. L. 792.

The right of railroad companies to enter into contracts of this general character has been recognized by our Supreme Court. *Sholl Bros. v. Peoria & P. U. R. Co.*, 276 Ill. 267; *Public Utilities Commission v. Smith*, 298 Ill. 151-159; *Chicago, R. I. & P. R. Co. v. Hamler*, 215 Ill. 525-529; *Blank v. Illinois Cent. R. Co.*, 182 Ill. 332-337; *Von Oven v. Chicago, B. & Q. R. Co.*, 317 Ill. 334.

In *Blank v. Illinois Cent. R. Co., supra*, the court at page 337 says: "It (the railroad company) is not charged with the duty of carrying express companies at all, and is therefore entitled to make a special contract establishing the duty and liability of the railroad on its side and of the express company on the

other. * * * Such a contract gives to the express company rights superior to other express companies and to the general public, which it has no right to demand, and which the railroad company is under no obligation to furnish except upon terms agreeable to it."

In *Chicago, R. I. & P. R. Co. v. Hamler, supra,* the court at page 529 says:

"The defendant is a common carrier of passengers, and as to them it assumes the duties and liabilities of a common carrier, but the Pullman Company furnishes special facilities and services to passengers, and the defendant is not a common carrier of Pullman cars and employees performing duties therein. The defendant might undertake to receive and haul the cars of the Pullman Company, but in doing so had a right to enforce such terms as it might elect."

In *Sholl Bros. v. Peoria & P. U. R. Co., supra,* the court at page 274, in discussing the construction of a contract between a railroad company and a coal company, has this to say:

"Plaintiff in error also contends that such a construction of the contract would be contrary to public policy and void, for the reason that railroad companies, being *quasi* public corporations created for the purpose of performing the duties of common carriers, have no right to contract with a corporation or individual to give exclusive right to transfer any commodity over any part of their lines. * * * The side-track involved in this case is not a part of the public railway of plaintiff in error. It is connected with said railway but not a part of it, and could not become a part of the railway system of plaintiff in error unless it be purchased or acquired by condemnation proceedings. As hereinbefore pointed out, the right of way on which the track was built is the private property of the defendants in error, and the right of the railway company therein is limited and governed

by the provision of the contract that has been considered."

Counsel for appellee also cite section 45 of the Public Utilities Act (Cahill's St. ch. 111a, ¶ 45) in their brief, but do not refer to it in their argument. However, an examination of this statute will disclose that there is no provision therein requiring a railroad company to extend its lines beyond its own premises.

It is also contended by counsel for appellee that paragraph 12 of the contract in question was against public policy and therefore illegal and void. This point is not well taken, and the authorities above cited clearly so hold.

It is further the position of counsel for appellant that, even though it be conceded that the situation of the parties as disclosed by the averments of the bill was such that on a hearing before the Public Utilities Commission appellant could have been compelled to make the connection and do the work which it has done in this instance, without any covenant on the part of appellee of the character covered by paragraph 12, yet until it has been so determined, the parties interested having entered into the contract in question and having performed under said contract, the same would be valid and binding until such determination by the proper authorities be had.

We are of the opinion and hold that this point is also well taken. *Jefferson Deposit Co. v. Central Illinois Light Co. of Peoria,* 309 Ill. 262-269.

In answer to appellant's position that it would not be required, under either the Warehouse Act or the Public Utilities Act, to construct its lines beyond its own premises, it is contended that paragraph 1 of the contract in question conveyed to the railroad company the premises on which the track known as the industrial track was laid.

Said paragraph does not give to the railroad company the land over which the industrial track was

laid, but simply gives it the control of said strip of ground during the time that said track is located thereon. This possession and control of the strip of ground on which a service track is laid on private ground, as in this case, by a railroad company, is held to follow as a matter of law. *Chicago Dock & Canal Co. v. Garrity,* 115 Ill. 155; *Public Utilities Commission v. Smith, supra; Von Oven v. Chicago, B. & Q. R. Co., supra,* 342. This holding is in accord with *Northwestern Warehouse Co. v. Oregon R. & Nav. Co., supra,* and with *Northern Pac. R. Co. v. Railroad Commission of Washington, supra,* where a conveyance of the right of way over the private property involved was tendered.

Appellee contends that appellant, by constructing the spur line in question, thereby conclusively admitted that all of the conditions existed which would have been sufficient to have warranted an order by the proper authorities, compelling the railroad to construct said spur, and that it was not necessary to show that said conditions existed. It might just as well be argued that said parties, by entering into the contract here involved, recognizing that the matters involved were not covered by the provisons of either the Warehouse Act or the Public Utilities Act, were therefore contracting in reference to said matters.

Appellee cites and principally relies on the case of *Public Utilities Commission v. Cleveland, C., C. & St. L. R. Co.,* 296 Ill. 513, to establish its contention that paragraph 12 of the contract in question is not based upon a consideration and is therefore invalid.

In that case, negotiations had been commenced between Kuhn and the railroad company for the building of an elevator by Kuhn, and for a switch track to the same, connecting with the main track of the railroad company. The extension to the elevator was to be built at Kuhn's expense, and during the negotiations he was informed that he would be required to execute

a sidetrack agreement, to which he made no objection, but the nature of the agreement, or what it was to contain, was not stated or determined. After he had built the elevator, a draft of the proposed sidetrack agreement was presented to him, which he refused to execute because it contained certain conditions which he deemed unreasonable and to which he had not assented. Among these provisions was one very similar to that in paragraph 12 in the contract in the case at bar. Upon Kuhn's refusal to execute the agreement, the railroad company refused to furnish a switch track, and accordingly Kuhn applied to the Public Utilities Commission for an order requiring the railroad company to furnish it in accordance with the provisions of the Public Utilities Act, which order, upon hearing, was granted. The court in discussing the case, page 516, says:

"The statute gave Kuhn a right to the connection upon conditions which existed and about which there was no controversy. The re-location of the switch-track was reasonably practicable, and it could be installed without materially increasing the hazard of the operation of the railroad. The business which might reasonably be expected to be received over the connection was sufficient to justify making the connection, and Kuhn agreed to pay the entire expense of the location of the track. * * * Having the right to the connection there was no consideration whatever for any agreement on his part to bargain away in advance the rights which the law gave him, and if he had made an agreement as claimed it could not be enforced. * * * A railway company cannot refuse to perform the duty enjoined upon it by the statute or annex any other condition than is therein provided."

The facts in the case at bar, however, do not bring it within the Kuhn case, for the reason that the record not only fails to show conditions which would warrant

the Public Utilities Commission in ordering the railroad company to build the spur in question, but affirmatively shows that those conditions do not exist, in that it affirmatively shows that the greater part of the line in question was built on premises not owned by the railroad company, but which were owned by appellee.

If the fire in question originated on the premises of the "Industry," and was communicated from the premises of the "Industry" to the property in the possession and control of the railroad company and for which it was responsible, as charged in said bill, and that property was destroyed, we see no reason why an indemnity such as the one here involved should not be given effect. In so holding we do not, as we understand it, run counter to the holding of the Supreme Court in *Public Utilities Commission v. Cleveland, C., C. & St. L. R. Co., supra.*

As counsel for appellee in their brief and argument do not raise the question of the right to an accounting in this case, if paragraph 12 is held valid and enforceable, we do not deem it necessary to discuss this feature of the case, further than to say that in our judgment such accounting is fully warranted by the authorities. We therefore hold that the court erred in sustaining a demurrer to said bill.

The judgment and decree of the circuit court is therefore hereby reversed and said cause is remanded, with directions to overrule said demurrer and to proceed with said cause.

*Reversed and remanded with directions.*