THE TOWN OF ANCHOR, Appellee, *vs.* DANIEL B. STEWART
*et al.* Appellants.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. HIGHWAYS—*what necessary to create highway by prescription.* To create a highway by prescription it is necessary that the use shall be under a claim of right, adverse, open, notorious, exclusive, continuous and uninterrupted for the statutory period.

2. SAME—*a permissive use cannot create a prescriptive right.* A mere permissive use cannot create a prescriptive right, and no inference adverse to the owner can be drawn from mere travel across unenclosed land by the public without objection.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

CHARLES L. CAPEN, and BARRY & MORRISSEY, for appellants.

WELTY, STERLING & WHITMORE, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of McLean county entered a decree enjoining the appellants from constructing a switch from the Illinois Central railroad across East street, in the town of Anchor, and a strip of ground one hundred feet west of East street which was alleged to be a public alley, to the public warehouse of the appellant Daniel B. Stewart, east of East street. In 1913 the appellant Arthur D. Stewart, who was the owner of the entire block, filed in the recorder's office a deed of vacation of the block, in which his father, Daniel B. Stewart, joined, and to which all the tenants gave their written consent. The only controversy is about the existence of an alley at the place in question.

The village of Anchor is unincorporated, has about two hundred population and is laid out on sixty-six and two-thirds acres of land, in four blocks, on both sides of the Illinois Central railroad, which there runs northeast

and southwest, blocks 1 and 2 lying north of the railroad
and blocks 3 and 4 south of the railroad.   The plat was
made in 1880 by Daniel B. Stewart, the owner of the
land, and block 3, which includes the ground in contro-
versy, was not subdivided.   In 1895 he caused another plat
to be made of block 3 showing a subdivision into twenty-
three lots.   The following is a copy of the latter plat:

There never has been any acceptance by the public of
the alley indicated on this plat and no claim of a dedica-
tion is made.   It is insisted by the appellee that the alley
exists by prescription, and that the evidence shows such
user by the public as a highway for fifteen years as to
constitute the place in question a public highway.

The south end of the north and south alley indicated
in block 3 is at Third street, a public highway.   The
north end of this alley, as well as the west end of the
other alley, terminates at the right of way of the Illinois
Central Railroad Company and is not connected with any
public highway.   The greater number of business build-

ings of the village of Anchor is north of the railroad. Different parts of block 3 have been occupied by various tenants since the making of the original plat and a half-dozen or more buildings have at different times been erected on the premises. Some have burned down, others have been removed, and at the time of the commencement of the suit there were three buildings on the east side of the block, all fronting on the streets on the outside of the block. The southwest part of the block was occupied by a lumber yard, having an office at the west end. For many years an elevator stood on the railroad right of way at the northeast corner of lot 23, and on that corner was the elevator office. Connecting this office with the sidewalk on Second street was a walk made of boards in the usual manner of street crossings, with slanting boards at either edge. Who made this walk does not appear, but it is not claimed that it was made by any public authority. This elevator burned down some years ago. At the southwest corner of the block on the right of way is another elevator, which was built many years ago and is still in operation, having its office on lot 22. On what is now lot 23 there was a lumber yard for many years. This lumber yard was not fenced, and there were no fences on the block until the lumber yard in the southwest corner was fenced some years ago, substantially on the west line of the north and south alley and the south line of the east and west alley. During all this time the block has been owned by Daniel B. Stewart and Arthur D. Stewart, the appellants, except lot 8, which was at one time owned by Matthew Martin, who conveyed it to Arthur D. Stewart in April, 1910. The buildings were occupied by tenants for business purposes, except that at one time the appellant Arthur D. Stewart had a dwelling house there. The buildings all faced on East street, Second street or Third street. Persons having occasion to go to the lumber and coal sheds to transact business with the occupants of the

premises, or to the elevator or grain offices, constantly traveled over the unoccupied portion of the block. Four telephone poles have been placed in the alley, and the consent of the highway commissioners was asked and given to place them there. No other act tending to show recognition of the alley as a highway by any public official appears in the record. It may be said that the public has traveled over the ground at will for many years without objection or interruption by the owner. The travel was not confined exclusively to the alley or the main driveway or the regular track, but people drove across lots without regard to the line of the alley. The evidence is that the use was wholly permissive. The tenants of the premises, and those dealing with them, traveled over this ground to the places where the business of the tenants was transacted, and the track, such as it was, was made by them. No work was ever done upon the alleged alley, of any character, by any person. While there was a defined track, the travel was not confined to this track but was wherever persons desired to go. For a time the office of the lumber yard was on lot 10, fronting on East street, and people coming from the east drove across lot 9 and west to the lumber yard. There is nothing to indicate that the appellants or their tenants had any reason to suppose that anyone claimed a right to travel over the road. They did not prevent the public from traveling over the block wherever they desired to go, but the use by the public was not as a matter of right as a public highway, but by license of the owner. A mere permissive use cannot create a prescriptive right, and no inference adverse to the owner can be drawn from mere travel across unenclosed land by the public without objection. (*Warren* v. *Town of Jacksonville,* 15 Ill. 236.) To create a highway by prescription it is necessary that the use shall be under a claim of right, adverse, open, notorious, exclusive, continuous and uninterrupted for the statutory period. (*Doss* v. *Bunyan,* 262

Ill. 101.) The prescription for a highway is not sustained by the evidence.

The decree will be reversed and the cause remanded, with directions to dissolve the injunction and dismiss the bill so far as the alleged alley is concerned, and affirmed as to East street.

*Reversed in part and remanded, with directions.*