(No. 13835.—Judgment affirmed.)

THE PUBLIC UTILITIES COMMISSION *ex rel.* The Illinois Central Railroad Company, Appellee, *vs.* WILL SMITH, Highway Commissioner, Appellant.

*Opinion filed April 21, 1921—Rehearing denied June 21, 1921.*

1. RAILROADS—*railroad company may construct railway across public highway without consent of highway commissioners.* The authority of a railroad company, under paragraph 5 of section 20 of the Railroad and Warehouse act, to construct a railway across a public highway without the consent of the highway commissioners where the highway is not located in an incorporated town or village has not been changed by statute, except that by section 58 of the Public Utilities act the Public Utilities Commission is given sole charge of such crossings.

2. PUBLIC UTILITIES—*when railroad company's petition to construct spur-track across highway to elevator is sufficient.* As the right of a railroad company to construct a spur-track across a public highway to a grain elevator outside an incorporated town or village is subject only to the limitations of section 58 of the Public Utilities act the petition therefor need set forth only the public reasons and necessities for the construction, and the track will be a part of the railway whether it is constructed by the company, by the owner of the elevator or at their joint expense. (*Koelle* v. *Knecht,* 99 Ill. 396, and *Sholl Bros.* v. *Peoria and Pekin Union Railway Co.* 276 id. 267, distinguished.)

3. SAME—*both railroad company and public elevator connected by spur-track are subject to Public Utilities Commission.* Where a spur-track connecting a railway with a public elevator is constructed at the joint expense of the railroad company and the owner of the elevator, both the railroad company and the elevator are subject to the control of the Public Utilities Commission.

4. SAME—*authority of highway commissioners over railway crossings is given to the Public Utilities Commission.* Whatever power highway commissioners may have had in regard to railway crossings over public highways is given to the Public Utilities Commission by the Public Utilities act.

5. SAME—*when decree, enjoining obstruction of highway does not preclude building of spur-track.* A decree enjoining the owner of an elevator from constructing a railway. track across a public highway without the consent of the highway commissioners does not estop the railroad company from petitioning for the construction of the side-track under the Public Utilities act, where the railroad company was not represented in the injunction suit and where the right to construct the track under the provisions of the Public Utilities act was not involved in that suit, the act having not then taken effect.

6. SAME—*orders of Public Utilities Commission must be reasonable and lawful.* The Public Utilities Commission is given no arbitrary powers by the statute and its orders and decisions must be reasonable and lawful.

7. SAME—*order of commission will be sustained if there is evidence to support it.* Reviewing courts will examine the facts upon which an order of the Public Utilities Commission is based, and an order within the scope of the authority of the commission will be sustained if there is substantial evidence to support it.

8. RES JUDICATA—*a former decree, to be binding in subsequent suit, must have been between same parties and involved same subject matter.* For a decree in a former suit to be binding in a subsequent proceeding it must be shown that the parties, as well as the subject matter, are the same in both proceedings.

9. INJUNCTION—*when injunction is canceled for failure to file remanding order within two years—practice.* Under section 114 of the Practice act the failure to file the remanding order of the Supreme Court within two years will operate as an abandonment of the suit and a cancellation of a decree granting an injunction against obstructing a certain street and alley, which decree was affirmed by the Supreme Court as to the street and reversed as to the alley.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

LIVINGSTON & WHITMORE, for appellant.

JOHN G. DRENNAN, (EDWARD J. BRUNDAGE, Attorney General, A. D. RODENBERG, W. E. TRAUTMAN, and GEO. B. & GEO. M. GILLESPIE, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Sangamon county affirming an order of the Public Utilities Commission granting the right to construct a switch or spur-track across the highway known as East street, in the town of Anchor, in McLean county, Illinois.

This cause has heretofore been before this court on appeal from the judgment of the circuit court of Sangamon county dismissing an appeal on the question whether an order of the Public Utilities Commission could be appealed from. (*Public Utilities Com.* v. *Thedens,* 291 Ill. 184.) In the former case we reversed the finding of the circuit court and remanded it, with directions to that court to consider the case on the merits. Later the circuit court did consider the cause on the merits and affirmed the decision of the commission. From this last order this appeal is taken.

The original petition was filed by the Illinois Central Railroad Company in January, 1914, praying the Public Utilities Commission to grant it permission to construct a side-track across the public highway known as East street, in Anchor township, unincorporated. The petition alleged the location of the side-track and that it has been partly constructed and that the highway commissioner of Anchor township objected to the location of the same; that the elevator to which it was proposed to construct said side or spur-track, when open for business, would be a public elevator having a capacity of some 60,000 bushels of grain, and that when said track was constructed grain could be loaded into cars with great expedition from the elevator; that the elevator is located several hundred feet from any track now at Anchor station and that grain has to be hauled in wagons from the elevator to the station for loading; that there is a great public demand for grain and for facilities for handling it, and that the method of carrying and

loading grain from the elevator to the railroad delays the movement of the grain and the use of cars for that purpose at the station. Hans Thedens, highway commissioner of Anchor township, who was made a party to this proceeding, filed an answer denying that the building referred to was a public elevator but averring that it was only a large corn-crib, and further alleged that the car shortage would not to any extent be relieved by the construction of a switch-track to the elevator; that without crossing the highway the elevator could be approached by a switch on the land of D. B. Stewart, who was made a party to the proceedings and who owned most of the farm land in that vicinity. He further answered setting out the proceedings in an injunction suit in the circuit court of McLean county brought by the highway commissioners against Stewart to restrain him from constructing a side-track across the highway, (*Town of Anchor* v. *Stewart,* 270 Ill. 57,) and the answers relied on in this last case, as an estoppel to these proceedings.

The evidence taken on the hearing before the Public Utilities Commission shows that Stewart owns a large farm surrounding Anchor, which annually produces about 15,000 bushels of grain; that he originally constructed the building here in question as a corn-crib and a bin to store oats; that he has converted it into an elevator with a capacity of 60,000 bushels of grain and has been taking steps to operate it, when he shall obtain facilities for loading, as a public elevator subject to supervision by the Public Utilities Commission; that it is impracticable to locate a side-track to this elevator in any place except that now proposed without extensive changes in the existing side-track and stock pens of the Illinois Central Railroad Company at Anchor. The evidence tends to show that the most feasible location for the side-track to the elevator is that proposed in this proceeding; that the highway commissioners

of Anchor township had knowledge of the location of this track and made no objection thereto until a personal dispute arose with the stockholders and officers of the Farmers Elevator Company, located at Anchor; that Thedens was, when these proceedings were instituted, highway commissioner and also an officer in the Farmers Elevator Company; that the evidence tends to show that many of the stockholders of the Farmers Elevator Company are opposing the construction of this side-track to Stewart's building, as argued by counsel for appellee, because of the fear of the competition that will result from the operation of an elevator by Stewart. The testimony offered on behalf of appellee shows, without serious contradiction, that a side-track can be located across the highway at grade in such way as not to interfere with travel thereon; that it is proposed to deliver cars from the elevator across the highway with a tractor, which cannot be operated at to exceed three or four miles per hour, or with pinch-bars; that the most serious objection urged by the highway commissioner is that the cars would be moved across the highway from the elevator to the railway by a tractor; that the only obstruction shown to the view of travelers upon the highway is a hedge growing on the side of the highway nearest the elevator, which the highway commissioner testified afforded some obstruction and which other witnesses testified would not materially obstruct the view. The testimony of Stewart was to the effect that if requested by the commission he would cut down the hedge so that the view on the highway would be wholly unobstructed at this point. The evidence tends to show that a large number of grain growers in this locality desire to use this elevator when the spur-track is constructed and that it would afford business to the Illinois Central Railroad Company, and that the side-track, when constructed, would facilitate the operation of its road and be a public convenience to the community. Appellant

attempted to show on the hearing before the Public Utilities Commission that it would be practicable to construct a spur-track to certain land of Stewart's upon which an elevator could be constructed without crossing the highway, by extending the side-track now located and connecting the main track of the railroad with the stock pens of the railroad company, while the evidence for appellee was to the effect that if the track were so constructed it would cost far more to move the cars to and from the railroad to the elevator at that point than it would on the proposed location of the side-track and Stewart's elevator.

It is argued by counsel for appellant that there is no authority to construct the side-track across this highway because the record shows that it is to be constructed solely for the private use of Stewart, and also that the track can not cross said highway without the permission of the highway commissioners being first obtained, and in any event cannot be so constructed because of this court's decision in the former injunction proceedings in *Town of Anchor* v. *Stewart, supra.* Paragraph 5 of section 20 of the Railroad and Warehouse act authorizes any railroad company chartered under the provisions of said act to construct a railway, and also to construct it across a public highway in the State, when the public highway is not located in an incorporated town or village, without the authority or consent of the highway commissioners. (*County of Cook* v. *Great Western Railroad Co.* 119 Ill. 218.) While this decision was rendered many years ago the statute has not been changed in this regard since that date, except that the Public Utilities act has provided by section 58 that the Public Utilities Commission shall have sole charge of such railway crossings over public highways. (*Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 Ill. 609; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Lake County,* 287 id. 337.) It would seem that section 58 of the Public Utilities act is the only modification of the

Railway Incorporation law and the only limitation upon
the charter powers of railroad companies to construct their
tracks across public highways outside of incorporated cities
and villages that has been made since section 20 of the
Railway act was enacted.    Said section 58 does not con-
fer any power upon railroad companies but merely provides
a limitation upon the exercise of such power, and it would
seem to follow that when the petitioner filed its petition in
this proceeding it was only required to aver that it pro-
posed to construct a track across the highway in question
and set forth the public reasons and necessities requiring
the construction thereof.    Whether it has a contract with
Stewart for a division of the expense of construction or
may use his services in doing the work is a matter which,
under the decisions of this court, is immaterial.    Prior to
the enactment of the Public Utilities act it was held more
than once by this court that a railroad track, though used
in connection with an industry on a line of railway, was,
as between the public and the railway company, a part of
the railway, whether constructed by the railway company,
the owner of the industry or at their joint expense.    Thus,
in *Truesdale* v. *Peoria Grape Sugar Co.* 101 Ill. 561, this
court said:    "The track defendant was authorized by ordi-
nance to construct, when completed and attached to the
principal track, is as much a 'public highway,' in the sense
that term is used in the constitution, as is the road of the
company to which it is attached, and no doubt is enter-
tained the company is subjected to the same duty to use it
for the 'convenience and benefit' of the public as any part
of its main track."    To the same effect see the decisions
of this court in *McGann* v. *People,* 194 Ill. 526, and *Peo-
ple* v. *Blocki,* 203 id. 363, and cases there cited.    In dis-
cussing this question in Lewis on Eminent Domain (vol. 1,
3d ed.) the learned author says (p. 318):    "In Illinois
such spur or switch-tracks are regarded as a part of the
railway and a public use, though serving but a single es-

tablishment and constructed at the expense of its owner.
When such a track is open to all who wish to use it, and
either does serve various parties or is capable of doing so,
it is a public use and may be laid in a street. So such a
track may be laid to the premises of an express company
for use in its business, as such companies are common car-
riers and the use is a public one." Again, this same author
says in the same volume, in discussing this same question
and construing the effect of the decisions of this court there-
on, on page 532: "But we believe that it is now the es-
tablished law of Illinois that a switch or spur-track from a
railroad to a business plant is to be regarded as part of
the railroad system and a public use even though paid for
by private parties."

We do not consider the case of *Koelle* v. *Knecht,* 99 Ill.
396, as in any way in conflict with this conclusion. In that
case, where the contest was over the use of a side-track laid
upon private ground, it was held that as to a coal company
having no interest in the track in question it was not a pub-
lic highway, and that case was decided before the Public
Utilities act was adopted. Neither do we consider the deci-
sion of this court in *Sholl Bros.* v. *Peoria and Pekin Union
Railway Co.* 276 Ill. 267, as in any way in conflict here-
with. In that case the proceeding was brought by Sholl
Bros. to restrain the use of a track (which had been con-
structed by them) in violation of an express contract not
to use the same for the purpose of hauling coal for others
than Sholl Bros. It appears from the record in that case
that no offer had been made to compensate Sholl Bros. for
the proposed use on account of their investment in the pri-
vate track, in accordance with the provisions of sections 45
and 46 of the Public Utilities act, and those sections were
not considered in that opinion. Those sections provide for
the use by any person of a track constructed at the joint
expense of the railway company and the shipper by making
compensation to the carrier and the shipper for such use.

If such tracks were, previous to the enactment of these provisions, in their nature private, they are rendered public and a part of the railway by these sections of the Public Utilities act, which provide that other parties may have free use under the conditions there stated. We see nothing in the decision of this court in *Sholl Bros.* v. *Peoria and Pekin Union Railway Co. supra,* that is in any way controlling on the questions here before us.

Prior to the enactment of sections 45 and 46 of the Public Utilities act there was no means provided for giving to one shipper the joint use of an industry track which another had constructed for his exclusive use. Said provisions of the act were evidently designed to remedy this among other defects in the then law of the State and commit the whole subject to the control of the Public Utilities Commission and provide for an equitable division of the cost of maintaining and operating such track. The evidence in this record tends to show that the side-track in question was to be constructed at the expense of the Illinois Central Railroad Company where it was to be laid on the company's own land and from that point to the elevator was to be constructed at the expense of Stewart, and he was to be responsible for any damages that might arise from accidents occurring on his land. It manifestly appears from the reasoning of this court in the decisions already cited, that side-tracks constructed under such conditions become a part of the public railway system with which they are connected, and it plainly appears from the Public Utilities act it was intended that both the railway company and the public elevator connected by a spur-track with the railway company's main track should be subject to the control of the Public Utilities Commission. (*Public Utilities Com.* v. *Lake Erie and Western Railroad Co.* 277 Ill. 574; see, also, *Public Utilities Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 296 id. 513.) In *Munn* v. *People,* 94 U. S. 113, it was held that public elevators

are instruments of commerce and transportation, subject to public regulation. In view of that decision it can hardly be argued that a side-track connecting a railway and a public elevator and jointly owned by the railway company and the owner of the elevator is not an instrument of commerce devoted to the public use and subject to regulation. In *Union Lime Co.* v. *Railway Com.* 233 U. S. 211, it was said that the fact that the initial cost of building a portion of a spur-track was borne primarily by private owners of the property to be connected with the main line of railway did not prevent the spur-track from becoming a portion of the trackage of the railway, nor did it make it a private track or change the nature of its use.

It is argued most earnestly by counsel for appellant that the finding of the Public Utilities Commission that the railroad company may cross the highway in question is in conflict with the decree rendered by the circuit court of McLean county in *Town of Anchor* v. *Stewart, supra.* An examination of the opinion in that case seems to show that no issue there decided is involved here. The bill filed in that case was based upon the theory that Stewart, without permission of the highway commissioners, was about to obstruct a public highway by building a railroad track across it. The prayer of the bill was for a temporary writ of injunction, which was granted and subsequently made permanent, and the only question passed upon was whether the public highway was about to be obstructed without consent. The bill in that case was filed January 5, 1914, and the act therein complained of occurred before the Public Utilities act became effective, January 1, 1914, so the right of the Public Utilities Commission to grant permission to the Illinois Central to construct a track across the public highway was not involved or adjudicated, because there was no attempt to exercise power or authority under the Public Utilities act. If it be conceded the town of Anchor had the power or right to interfere with the Illinois Central Rail-

road Company in constructing its track across the public highway before the Public Utilities act was enacted, it also had the power to consent to the construction thereof through the highway commissioners; but under the Public Utilities act whatever power the highway commissioners may have had in that regard was taken from them and passed to the Public Utilities Commission. (*Chicago, Burlington and Quincy Railroad Co. v. Cavanagh, supra.*) The bill for injunction in the case heretofore referred to, alleged that an obstruction was about to be imposed upon the highway without the permission of the highway commissioners. Even if it be conceded that this court held in that case that the side-track could not be so located by Stewart without the consent of the highway commissioners, it can not be so held under the construction given to the Public Utilities act in the cases just cited. At the most it can only be held that the injunction in that case restrained Stewart from building the track without the consent of the proper authorities. That is not the situation here. Furthermore, in order to have the opinion in that case binding in this proceeding it must be shown that the parties in that proceeding and in this, as well as the subject matter, are the same. This court said in *Chicago Theological Seminary v. People,* 189 Ill. 439: "Where a former adjudication is relied upon as an absolute bar, there must be, as between the actions, identity of parties, of subject matter and of cause of action. But it is also well settled that when the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. Where some controlling fact or question material to the determination of both causes has been adjudicated in the former suit by a court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first

will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not. This is sometimes denominated an estoppel by verdict." In another authority on this question the rule is laid down as follows: "The persons between whom a judgment or decree in a suit is conclusive in a subsequent suit are the parties to the prior suit and their privies, and as a general rule it is conclusive only between them. The mere fact that a person had an interest in the subject matter of the prior suit will not render the judgment or decree therein conclusive upon him." (24 Am. & Eng. Ency. of Law, 724; see, also, 10 R. C. L. 837; 21 Corpus Juris, 1067.) In the injunction proceedings relied on by counsel for appellant it does not appear that the Illinois Central Railroad Company was in any sense represented and therefore it was not bound by the decree, nor was the question of the right to construct the side-track under the provisions of the Public Utilities act there involved, directly or indirectly.

It would appear, also, that there is another reason why the judgment of the circuit court in the injunction case would not be binding here. While it is true that everything filed of record in the circuit court and the Supreme Court in that case is binding upon the parties in that case as an estoppel, the failure to file the remanding order within two years operated as an abandonment of the suit and a wiping out or cancellation of the injunction under the provisions of section 114 of the Practice act of this State. (Hurd's Stat. 1919, p. 2296.) It appears from the record and briefs in this proceeding that the transcript of the judgment in the injunction proceedings has never been filed in the circuit court of McLean county, and therefore, under the reasoning of this court in construing said statute, that judgment no longer affects or binds the actual parties thereto. *Koon* v. *Nichols,* 85 Ill. 155.

Counsel for appellant further argue that the order of the Public Utilities Commission granting leave to build the track across the public highway is not warranted by the evidence. Section 68 of the Public Utilities act provides that the findings and conclusions of the commission on questions of fact shall be held *prima facie* to be true as found by the commission; and the same act also provides that a rule, regulation, order or decision of the commission shall not be set aside unless it clearly appears that the findings of the commission were against the manifest weight of the evidence presented to or before the commission for and against such rule, regulation, order or decision, or that the same was without the jurisdiction of the commission. (*Public Utilities Com.* v. *Toledo, St. Louis and Western Railroad Co.* 286 Ill. 582.) The Public Utilities Commission is given no arbitrary powers by the statute and its orders and decisions must be reasonable and lawful. (*Public Utilities Com.* v. *Bus Line,* 290 Ill. 574.) Reviewing courts will examine the facts upon which the Public Utilities Commission's order is based, and if there is substantial evidence to sustain it the order will be sustained. (*Public Utilities Com.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 287 Ill. 412.) In this case the commission acted within the scope of its authority. The order had a substantial basis in the evidence, and we find no ground upon which the court could interfere with the judgment of the commission. The finding in this case is supported by the weight of the evidence heard before the commission, and courts are therefore without authority to set aside or modify such order.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*