SOUTH P. R. SUGAR Co., apelada, *v.* COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO, y JUAN TORRUELLA CORTADA y JUAN FLORES, apelantes.

Núm. 6976.—*Sometido:* Diciembre 8, 1936. *Resuelto:* Abril 30, 1937.

*Hon. Procurador General B. Fernández García* y *T. Torres Pérez, Subprocurador,* abogados de la Comisión de Servicio Público, apelante; *Pedro M. Porrata,* abogado de los apelantes Sres. Torruella y Flores; *F. Manuel Toro* y *R. Castro Fernández,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA emitió la opinión del tribunal.

Es ésta una apelación de una sentencia de la Corte de Distrito de San Juan, revocando una resolución de la Comi-

sión de Servicio Público de Puerto Rico. En la resolución revocada se ordenó que la American Railroad Co. of P. R. permitiese a los Sres. Juan Torruella Cortada y Juan Flores el uso de una parte proporcional del desvío "Tenerías", hasta una cabida de tres vagones, mediante el pago de una cuarta parte del costo original de este desvío, y una cuarta parte del costo anual del mantenimiento del mismo.

En septiembre 17 de 1908, la Guánica Central construyó dicho desvío a sus expensas, sobre terrenos de su propiedad, conectándolo al ramal Barrancas, el que empalma a su vez con las líneas principales de The American Railroad Co. of P. R. Desde entonces la Guánica Central, y luego su sucesora, The South P. R. Sugar Co., han venido utilizando dicho desvío sin interrupción exclusivamente para el embarque de sus cañas y la de sus colonos, y sufragando los gastos de sostenimiento de dicho desvío.

En febrero 20 de 1933, los interventores apelantes radicaron una querella ante la Comisión de Servicio Público solicitando participación en el uso de dicho desvío, al amparo de la subdivisión *n* del artículo 3 de la Ley de Servicio Público de 1917 (Ley núm. 70 de 1917 (2) pág. 449). Alegaron que las vías principales de The American Railroad Co. of P. R. están conectadas al ramal Barrancas, el cual empalma a su vez con el desvío; que los querellantes poseen tierras sembradas de cañas en las inmediaciones del desvío, produciendo las de don Juan Torruellas unas 2,500 toneladas de cañas y las de don Juan Flores unas 300 toneladas más o menos, que muelen en la Central Mercedita, y que debido a su localización, el desvío Tenerías es el único que ofrece facilidades para el embarque de las cañas de dichos querellantes; que las querelladas The American Railroad Co. of P. R. y The South P. R. Sugar Co. se han negado a permitirles a los querellantes una participación en el uso del mencionado desvío, a pesar de que éstos están dispuestos a pagar una compensación de conformidad con lo dispuesto en la parte pertinente de la Ley de Servicio Público de 1917; que de

no concedérseles lo solicitado, los querellantes se verán obligados a transportar sus cañas en carretas de bueyes hasta desvíos situados a mayor distancia, perdiendo una suma de dinero que no bajará de 75 centavos por cada tonelada y sufriendo bajas en el rendimiento de sus cañas.

The American Railroad Co. of P. R. contestó alegando no tener interés especial en el asunto y estar dispuesta a someterse a la adjudicación que sobre el particular hiciese la Comisión de Servicio Público.

Negó South P. R. Sugar Co. los hechos esenciales expuestos en la querella y alegó que el desvío Tenerías fué construído por su antecesora en el año 1909, en terrenos hoy de la exclusiva propiedad de la querellada y que es imposible el acceso a dicho desvío sin pasar por dichos terrenos privados; que la Comisión de Servicio Público no tiene autoridad para conceder a terceras personas participaciones en el uso de un desvío privado construído con anterioridad a la ley de servicio público ni para conceder servidumbre de paso sobre los terrenos privados en que el desvío está construído.

La Comisión de Servicio Público, luego de oír a las partes, ordenó a The American Railroad Co. of P. R. que permitiera a los querellantes el uso de una parte proporcional del referido desvío hasta una cabida de tres vagones, mediante el pago por éstos de una cuarta parte del costo original del desvío y una cuarta parte del costo anual del mantenimiento del mismo, y ordenó además que si The South P. R. Sugar Co. se negaba a permitir el uso de la faja de terreno dedicado exclusivamente a dicho desvío, la mencionada compañía de ferrocarril cesara de prestar servicios a dicha corporación en el desvío y procediera a desconectar el mismo de sus vías principales.

No conforme con esta resolución, The South P. R. Sugar Co. apeló de la misma para ante la Corte de Distrito de San Juan. La referida corte, luego de oír a las partes, revocó la resolución apelada, basándose en que habiéndose probado

que para llegar al desvío es necesario atravesar terrenos de la propiedad de The South P. R. Sugar Co., la Comisión no tiene autoridad para conceder a los querellantes una participación en el uso del mismo ni para obligar a The South P. R. Sugar Co. a permitir que pasen personas particulares por sus terrenos para llegar hasta el desvío, sin que medie compensación o un procedimiento de expropiación forzosa, pues ello equivaldría a privarla de su propiedad sin el debido procedimiento de ley.

Vamos a permitirnos discutir las cuestiones planteadas en los alegatos sin ajustarnos estrictamente al orden que se fija en los errores señalados, por resultar éstos algo confusos y sernos más fácil espigar los asuntos fundamentales y resolverlos en el curso de esta opinión.

■ Alega la parte apelada que la Comisión de Servicio Público no puede conceder a terceras personas participación en el uso de un desvío construído sobre terrenos de una persona particular y conectado a las vías de un ferrocarril de servicio público, si dicho desvío fué construído y conectado con anterioridad a la aprobación de la Ley de Servicio Público de 1917.

La subdivisión n del artículo 3 de la mencionada Ley de Servicio Público de 1917 dispone por quién y bajo qué circunstancias se podrá requerir a una compañía de ferrocarril de servicio público para que conecte un desvío particular a sus vías principales o a cualquier ramal o desvío particular que esté conectado a sus vías principales. Dice además la ley que siempre que un desvío particular hubiere sido conectado "de ese modo" con un ferrocarril de servicio público, cualquier persona podrá hacer uso del mismo mediante el pago de una proporción razonable del costo original y del costo anual de sostenimiento del desvío, y en casos en que las partes no lleguen a un acuerdo, la Comisión de Servicio Público, mediante audiencia, fijará la compensación entre ambos. Copiamos a continuación la subdivisión n del artículo anteriormente citado:

*"Construcción de conexiones por ferrocarril.*—Si se tratare de una compañía de ferrocarril, a solicitud de cualquier dueño o explotador de cualquier ferrocarril lateral, o de cualquer desvío particular, o de cualquier embarcador que ofreciere propiedad o tráfico para el transporte o de cualquier consignatario, aquélla deberá construir, conservar y explotar, en sitio y en condiciones razonables, una conexión de desvío con cualquier ferrocarril lateral o desvío particular que se construyere para conectarlo con su ferrocarril, siempre que dicha conexión fuere razonablemente práctica y pueda instalarse con seguridad y siempre que aportare negocio suficiente que justifique su construcción y conservación. Siempre que una línea lateral de ferrocarril, o desvío particular hubiere sido conectado de ese modo con una línea de cualquier ferrocarril, o siempre que cualquier dueño de dicho ferrocarril lateral o de cualquier desvío particular hubiere en cualquier tiempo vendido o arrendado, o en lo sucesivo vendiere o arrendare, dicho ferrocarril lateral o desvío a cualquiera compañía de ferrocarril, cualquier persona o compañía tendrá derecho a conectar con aquél, o a hacer uso del mismo, mediante el pago a la parte que hizo el gasto original de una razonable proporción del costo del mencionado ferrocarril lateral o desvío particular, y de su conservación, el cual costo se determinará, en caso de desacuerdo entre las partes, por la Comisión previa audiencia de las partes, siempre que dicha conexión y uso pueda hacerse sin intervenir razonablemente con el uso del mismo por la parte que hizo el gasto primitivo o por el que fuere dueño o arrendatario del mencionado ferrocarril lateral o desvío particular."*

Arguye la apelada en su alegato que a tenor del precepto transcrito, una tercera persona sólo tiene derecho a participar en el uso de un desvío particular empalmado a un ferrocarril de servicio público si ese desvío hubiere sido conectado a las vías principales del ferrocarril "de ese modo", es decir, si hubiere sido conectado, por la propia compañía de ferrocarril, tal como reza la primera parte de la citada subdivisión *n* del artículo 3, después de aprobada la Ley de Servicio Público de 1917, en cumplimiento con la obligación que dicho precepto le impone de "construir, conservar y explotar" el desvío solicitado. Insiste la apelada en que a virtud de ese lenguaje el precepto transcrito no autoriza a la Comisión de Servicio Público a conceder parti-

432

cipación en el uso de un desvío que como el de Tenerías haya sido construído a expensas y sobre terrenos de una persona particular con anterioridad a la aprobación del referido precepto.

La Corte Suprema del estado de Illinois, interpretando un precepto legal en que sustancialmente se usa el mismo lenguaje que da margen a la apelada para alegar la irretro-actividad de la subdivisión *n* del artículo 3 de nuestra ley de servicio público, ha expresado un criterio contrario al invocado por la apelada, en el caso de *Public Utilities Commission* v. *Smith*, 298 Ill. 151, 131 N. E. 371, 373, 374. Los hechos que sirvieron de base a la opinión emitida por la Corte Suprema de Illinois difieren de los que han dado origen a la querella establecida por los Sres. Torruella y Flores, pero en dicha opinión se enuncian y establecen principios que resultan perfectamente aplicables al presente caso. Sostiene el referido tribunal, interpretando el artículo 45 de la Ley de Servicio Público de Illinois que cualquier persona tiene derecho a obtener una participación en el uso de un desvío particular empalmado a las vías principales de un ferrocarril de servicio público, aunque el desvío haya sido construído con anterioridad a la aprobación de la ley. La parte pertinente de dicha opinión dice así:

"No consideramos que el caso de *Koelle* v. *Knecht*, 99 Ill. 396, esté en conflicto en forma alguna con esta conclusión. En dicho caso la contienda giró en torno al uso de un desvío puesto a través de terrenos privados. Se resolvió que en lo que se refería a una compañía carbonera que no tenía interés en la vía en cuestión, la misma no era un camino público, y ese caso se decidió antes de adoptarse la Ley de Servicio Público. Tampoco creemos que la decisión de este tribunal en *Sholl Bros.* v. *Peoria & Pekin Union Railway Co.*, 276 Ill. 267, 114 N. E. 529, esté en absoluto en conflicto con el presente. En dicho caso el recurso fué instado por Sholl Bros. para impedir el uso de una vía construída por ellos en violación de los términos expresos de un contrato que prohibía el uso de la misma para transportar carbón perteneciente a otras personas que no fueran Sholl Bros. De los autos de dicho caso se desprende que no se había hecho oferta alguna de compensar a Sholl Bros. por el su-

puesto uso, a causa de la inversión por ellos hecha en la vía privada, de conformidad con las disposiciones de los artículos 45 y 46 de la Ley de Servicio Público, y dichas secciones no fueron consideradas en esa opinión. Esas secciones disponen que cualquier persona puede usar una vía construída conjuntamente por una compañía ferroviaria y por el embarcador, pagando compensación al porteador y al embarcador por tal uso. Si tales vías eran privadas en su naturaleza con anterioridad a la aprobación de estas disposiciones, las mismas se convierten en públicas y son parte del sistema ferroviario de conformidad con estas secciones de la Ley de Servicio Público, que disponen que otras personas pueden gozar del libre uso de las mismas bajo las condiciones allí estipuladas. Nada vemos en la decisión de esta corte en el caso de *Sholl Bros.* v. *Peoria & Pekin Union Ry. Co.,* supra, que sea terminante sobre las cuestiones que penden ante nos.''

Las conclusiones de la Corte Suprema de Illinois nos parecen muy acertadas porque se inspiran en razones de interés público y porque no puede discutírsele al estado la facultad de adoptar medidas razonables y necesarias para el mantenimiento de la salud pública y el bienestar de la comunidad.

La Comisión de Servicio Público se expresa así al referirse en su opinión a las peculiares exigencias del transporte de caña en Puerto Rico:

''Ya hemos apuntado las peculiares exigencias del problema del transporte de la caña por ferrocarril y señalado la regla aprobada por la Comisión de Servicio Público, a través de la cual solamente se permite la construcción de desvíos en la vía general a una distancia de dos kilómetro de uno a otro. De manera que, no habiéndose llevado a cabo una distribución equitativa de los desvíos, entre las distintas zonas y entre las distintas personas interesadas en el embarque de cañas en esas zonas, es indudable que aquellas personas que obtuvieron la construcción de sus desvíos con anterioridad a la reglamentación de los mismos, y aún los que la obtuvieron posteriormente, tienen *de facto,* dentro de las actuales circunstancias, el control de los medios de transporte, en determinada comarca, lo cual les da casi un monopolio de los sitios de carga, pudiendo así, mediante esto, adueñarse de los terrenos y del producto de los mismos, con perjuicio de los intereses generales de la industria y de la agricultura.''

En nuestro sentir, de acuerdo con la subdivisión *n* del artículo 3 de la Ley de Servicio Público de 1917, una persona particular colocada en las condiciones requeridas por la ley, puede obtener, mediante compensación, participación en el uso de un desvío empalmado a un ferrocarril de servicio público, aunque ese desvío haya sido construído y conectado antes de diciembre 6, 1917, fecha en que fué aprobada la referida ley.

En cuanto a la validez y fuerza que pudieran tener los contratos de la South P. R. Sugar Co. en materia que afecte al servicio público por ferrocarril, creemos, con la Comisión de Servicio Público, que el estado ha venido ejerciendo su autoridad suprema para asegurar la marcha no interrumpida de la política que ha querido establecer, a fin de beneficiar a la comunidad, sin tener en cuenta contratos anteriores que hayan podido oponerse a dicha política. Antes de robustecer este criterio con algunas citas, queremos hacer constar que el Sr. Vasallo declaró que el desvío Tenerías fué instalado sin contrato desde 1909 hasta 1927. Aclara luego que hubo un contrato, un contrato verbal, cuyas condiciones no serían las mismas que el último, porque un contrato escrito tiene determinadas especificaciones en términos generales para el uso y usufructo de un desvío privado conectado a una vía pública. Afirma el testigo que el contrato de 1927 se llevó a cabo por tres años, renovables automáticamente como todos los contratos de desvío. En este último contrato se hizo constar que la South P. R. Sugar Co. se compromete y obliga a ceder a la compañía de los ferrocarriles de Puerto Rico el uso de todo el terreno que ocupa el desvío en una extensión de cinco metros desde el eje de la línea férrea de su desvío y a ambos lados del mismo. Se dice además que la compañía no podrá hacer uso del desvío para cargar o descargar cañas u otros materiales para ninguna otra persona o compañía, ni hacer uso del desvío para otros fines además de los especificados.

No tenemos detalles del convenio verbal celebrado al

instalarse el desvío en 1909. Unicamente sabemos que se construyó el desvío y que hubo un convenio, porque así lo declara el Auditor y Subdirector de la compañía ferroviaria, Sr. Vasallo. La construcción del desvío en esa fecha, sin embargo, no es óbice para que resulte aplicable la ley aprobada en 1917.

En el caso de *North Dakota Board of Railroad Examiners*, informado en el volumen P.U.R. 1921A, pág. 121, se dice lo siguiente:

"Los contratos deben ser interpretados en el sentido de que han sido otorgados en cumplimiento, con el posible ejercicio, de la recta e inherente autoridad del gobierno, y ninguna obligación puede ser garantizada o estar cubierta por un contrato con el fin de destruir intencional o no intencionalmente, la autoridad inherente del gobierno. La facultad de redactar un contrato no otorga al individuo o municipio el derecho de contratar tan libremente como desee. La libertad de contratación no implica inmunidad contra las prohibiciones razonables que están en interés del bienestar público. En *Atlantic Coast Line R. Co.* v. *Goldsboro*, 232 U. S. 548, 558, 58 L. ed. 721, 726, 34 Sup. Ct. Rep. 364, la corte dijo:

" 'Ha quedado establecido que ni la cláusula contractual ni la relativa al debido proceso tiene el efecto de destruir el poder del estado para establecer toda la reglamentación que es razonablemente necesaria para garantizar la salud, seguridad, buen orden, comodidad o bienestar general de la comunidad; que este poder no puede ser abdicado ni negociado y que es inalienable aún por concesión expresa; y que todos los derechos contractuales y de propiedad están sujetos al ejercicio razonable de esa facultad.'

"También en el caso reciente de *Chicago & A. R. Co.* v. *Tranbarger*, 238 U.S. 67, 76, 59 L. ed. 1204, 1210, 35 Sup. Ct. Rep. 678, la Corte Suprema de los Estados Unidos, hablando por voz del Juez Pitney, al considerar la cláusula que dispone que los contratos no pueden ser menoscabados, que aparece en la Constitución Federal, dijo: 'Ha quedado establecido por repetidas decisiones de este tribunal que ninguna de estas disposiciones de la Constitución Federal (la relativa a menoscabar la obligación de los contratos y la relativa al debido proceso de ley) tiene el efecto de destruir la facultad del estado para establecer toda la reglamentación que sea razonablemente necesaria para garantizar la salud, seguridad o bienestar general de la comunidad; que este poder no puede ser abdicado ni negociado

y que es inalienable aún por concesión expresa; y que todos los derechos contractuales y de propiedad están sujetos al ejercicio razonable de esa facultad. Y también ha quedado establecido que el poder de policía comprende aquellas reglamentaciones que tienen por objeto promover la conveniencia pública o el bienestar y la prosperidad general, así como aquéllas que están en interés de la salud, moral o seguridad públicas.' '' (Citas).

En *Louisville & N. R. Co.* v. *Mottley,* 219 U. S. 467, 482, se dijo lo siguiente:

"El contrato celebrado por la compañía ferroviaria y los Mottley, tiene necesariamente que ser considerado como otorgado sujeto a la posibilidad de que el Congreso, en época futura, pudiera ejercitar toda su facultad constitucional para reglamentar el comercio entre estados, en tal forma que hiciera que tal contrato no pudiera ponerse en vigor, o menoscabar el valor del mismo. Que el ejercicio de tal facultad puede ser obstruído o restringido en alguna forma por contratos anteriormente celebrados entre individuos o corporaciones, es algo inconcebible.''

En *Market St. R. Co.* v. *Pacific Gas & E. Co.* (D. C.), 6 F. (2d) 633, 635, P.U.R. 1926A, 509, 515, se dice:

"Sobre la cuestión relativa a la facultad del estado para reglamentar los contratos de sus compañías de servicio público con sus consumidores, la ley ya está bien establecida. Las cortes han resuelto que todos los contratos relativos al servicio público celebrados por la corporación que explota un servicio público y el consumidor privado, por la propia naturaleza de su objeto, contenían una reserva implíc'ta del derecho del estado a ejercitar legalmente su poder de policía en pro del bienestar general, y que no existe menoscabo en las obligaciones del contrato dentro de las garantías de las constituciones del estado o federal, aun si dicho contrato queda así parcial o totalmente anulado.''

El hecho de que los gastos del desvío hayan sido satisfechos exclusivamente por la South P. R. Sugar Co., y que se haya convenido entre las partes que la compañía no podrá hacer uso del desvío para cargar o descargar cañas u otros materiales para ninguna otra persona o compañía, no puede impedir que ese desvío sea dedicado a uso público en violación de los preceptos del estatuto. Bajo las leyes relacionadas con la utilidad pública, una compañía de ferrocarril y el

dueño privado de una industria no pueden, mediante convenio, edificar un desvío y limitar el uso a ciertos embarcadores. Una vez construído el desvío, queda abierto al uso público y a reglamentación, cualquiera que sea la parte que haya pagado el uso de la construcción. *Von Oven* v. *Chicago etc. R. Co.*, 317 Ill. 334, 148 N. E. 32.

La Carta Orgánica de Puerto Rico, en su artículo 38, concede a la Asamblea Legislativa autoridad para decretar leyes relativas a la reglamentación de los precios, tarifas y servicios de porteadores públicos por ferrocarril en Puerto Rico. La Comisión de Servicio Público tendrá facultad para poner en ejecución leyes de este carácter mediante reglamentación adecuada.

La Ley de Servicio Público de Puerto Rico, aprobada con posterioridad a la aprobación de la Carta Orgánica vigente en la actualidad, dice, en su artículo 24, al referirse a la facultad de reglamentar, que "dicho poder y autoridad incluirá el poder de inquirir, oír, determinar y reglamentar la concesión, construcción, explotación o abandono de desvíos, apartaderos y cruces" etc.

Las facultades de la Comisión son, a nuestro juicio, claras. Queda, sin embargo, por resolver la cuestión fundamental y es la que sirvió de base al fallo de la Corte de Distrito de San Juan. Sabemos que dicho tribunal revocó la resolución de la comisión, por el único fundamento de que para llegar al desvío por cualquier sitio que no sean las vías de la American Railroad Co. es necesario atravesar los terrenos privados de la South P. R. Sugar Co. La corte inferior entiende que esto equivale a privar a dicha corporación de su propiedad particular sin el debido procedimiento de ley.

De acuerdo con la prueba ofrecida por la South P. R. Sugar Co., el desvío tiene 152 metros desde la punta de la aguja hasta el final de la muralla. La South P. R. Sugar Co. aparece concediendo a la compañía ferroviaria en 1927 el uso de todo el terreno que ocupa el desvío en una extensión

de cinco metros desde el eje de la línea férrea de su desvío y a ambos lados del mismo. El testigo de dicha compañía, José Rodas García, ingeniero civil, declara que desde la punta del desvío al camino vecinal hay una distancia de 206 pies. Se le pregunta por la distancia desde el punto más cercano al camino y dice que no aparece en el mapa la figura. Se le interroga nuevamente si puede calcular la distancia que hay del extremo este del camino y contesta que ciento y pico de pies; ciento veinticinco pies aproximadamente.

El interventor y apelante, Juan Torruella Cortada, dice que la Guánica no posee nada más que esas dos cuerdas o cuerda y media de terreno en los alrededores de ese desvío. Copiamos a continuación parte del interrogatorio de este testigo:

"P. ¿Usted tiene permiso para entrar a esos terrenos?

"R. En esos terrenos no; por eso lo solicito.

"P. ¿Usted solicita permiso para atravesar esos terrenos y llegar a la vía?

"R. La vía está dentro de la cuerda y media.

"P. ¿Para llegar al desvío tiene usted que atravesar parte del terreno?

"R. Del terreno dedicado al desvío, que no hay otra cosa.

"Sr. Muñoz: ¿La Guánica tiene allí cuerda y media?

"R. Sí, señor.

"P. ¿Y sobre eso es que tiene el desvío?

"R. Sí, señor.

"P. ¿Y la finca que circunda esa cuerda, de quién es?

"R. Fagot, Milán y de Schuck.

"P. ¿Milán ya ha dicho que sí que usa el desvío?

"R. Sí, señor.

"P. ¿Y Fagot lo usa?

"R. No sé si este año haría negocio con la Guánica.

"P. ¿Y el año anterior?

"R. Me parece que el año anterior para poderle mandar cañas de contrato que tiene con la Central Bocachica, dió una parte proporcional de cañas a Guánica.

"P. ¿Y el otro señor Schuck también usa ese desvío?

"R. Schuck solamente tiene un pedazo de cuerda.

"Lic. Toro: ¿Usted se refiere a don Federico Schuck?

"R. Sí.

"P. Él no tiene cañas.

"R. Él me preguntaba de linderos.

"Lic. Toro. ¿Y parando sus cañas en el camino público puede usted cargar las cañas en los vagones colocados en el desvío?

"R. Hay una distancia como del largo de este cuarto, del camino vecinal a donde está la vía.

"P. ¿Al centro del desvío?

"R. Sí. Tengo que atravesar los terrenos, la parcela donde está la vía, que no hay otra cosa allí; no hay siembras de ninguna clase; es pasto.

"Sr. Muñoz: ¿En esa cuerda y media de terreno de la Guánica no hay más que pasto?

"R. Está abandonada. No hay ni cerca del camino vecinal a la cuerda ésa. Cabros y vacas del vecindario se pasan allí."

El testimonio de este testigo demuestra que prácticamente todo el terreno que allí posee la South P. R. Sugar Co. está dedicado al desvío, aunque la vía con sus cinco metros a cada lado, partiendo desde el eje de la línea férrea, sólo ocupa parte del referido terreno. No hay allí siembras ni cerca, y los animales del vecindario se pasan por allí, de acuerdo con el testimonio de Juan Torruella Cortada que en estos extremos no ha sido contradicho.

Hemos visto que la Guánica Central construyó un desvío hace ya algunos años y que la South P. R. Sugar Co., su sucesora, ha celebrado recientemente un contrato con la compañía ferroviaria sobre el referido desvío. Al construirse este desvío se ha establecido una servidumbre voluntaria no solamente en favor de la American Railroad Company of P. R., sino de aquellas personas que necesitasen usar el referido desvío. No importa los términos en que aparece redactado el contrato. La servidumbre voluntariamente establecida se extiende, por razones de interés público, a todas las personas que necesiten utilizar el desvío. La Guánica Central, al construirlo, contrajo obligaciones que constituyen un verdadero estado de servidumbre mientras subsista la conexión con la línea ferroviaria. Nadie obliga, sin embargo, a la South P. R. Sugar Co. a mantener el referido desvío; pero si

continúa utilizandolo, si insiste en gozar del privilegio que le fué concedido, debe cumplir con las condiciones requeridas por la ley. Como dice la Corte Suprema de Illinois en *Von Oven* v. *Chicago etc. R. Co.*, supra, no puede construirse un desvío, limitado exclusivamente al uso privado. La ley exige que cualquier desvío así construído esté abierto al uso público y que sea explotado por el ferrocarril con que éste enlaza.

Al establecerse una servidumbre se entienden concedidos todos los derechos necesarios para su uso. Así lo establece el artículo 478 de nuestro Código Civil. La servidumbre, una vez establecida, lleva implícita todos los derechos necesarios para darle efectividad. No existe servidumbre cuando se le niegan a la persona a quien se le concede los medios de utilizar su derecho. La servidumbre en este caso sería nominal e ilusoria, como muy bien dicen los comentaristas Scaevola y Manresa. Comentando el artículo 542 del Código Civil Español, equivalente al 478 del nuestro, dice el último de dichos comentaristas:

"Las servidumbres de abrevadero y saca de agua llevan consigo la obligación de dar paso hasta el sitio en que se aproveche el agua; la de acueducto da derecho al paso por sus márgenes, etc. A estas servidumbres, necesarias para el uso de otras, se nombran servidumbres accesorias; tienen exclusivamente su razón de ser en la servidumbre principal. Sólo existen en cuanto son necesarias; sólo pueden reclamarse cuando son indispensables para el ejercicio de la servidumbre principal; al morir ésta, mueren también las servidumbres accesorias.

"El art. 639 del Código civil italiano dice, que en el caso de hallarse la finca cercada, el propietario debe dejar libre y cómoda la entrada a quien ejercite el derecho de servidumbre. Es libre el ingreso, como dice Filippis, cuando para su ejercicio no se necesita el concurso ajeno; es cómodo cuando puede pasarse sin obstáculo ni demora, del modo que se quiera. Así, en el caso de que exista una verja, podrá y deberá darse al dueño del predio dominante una llave para abrir y pasar con independencia."

Como hemos dicho, en el presente caso no hay cerca ni siembras. Todo el terreno, según uno de los testigos, está

prácticamente dedicado al desvío. El cumplimiento de la condición exigida por la Comisión de Servicio Público para que la South P. R. Sugar Co. pueda continuar utilizando el desvío no le ocasiona daño alguno de acuerdo con la prueba. La compañía azucarera debe permitir el uso proporcional de dicho desvío a los interventores apelantes, así como también el derecho de paso en la faja de terreno en que está situado el mencionado desvío. No se priva a la referida compañía de su propiedad; simplemente se le impone una condición en favor de otras personas que tienen derecho al uso de la servidumbre, previo pago de la correspondiente compensación.

En el caso de *Menasha Woodenware Co.* v. *Railroad Commission,* 166 N. W. 435, 438, la Corte Suprema de Wisconsin dice lo siguiente:

"La cuestión más importante planteada por los apelantes en estos casos es que el llamado desvío no es realmente un desvío, sino una extensión del ramal de Kingston de la línea noroeste. No acertamos a comprender cómo pueda mantenerse este argumento con éxito favorable. Una extensión de la línea de ferrocarril viene a ser, una vez edificado, parte del sistema de ferrocarril, que la compañía debe operar como un conductor (*common carrier*), sirviendo al público en términos de igualdad; un desvío, sin embargo, aunque parte del sistema ferroviario, es en esencia una facilidad para un embarcador o para varios embarcadores que contribuyen a su construcción, siendo entendido que está abierto a todas las industrias que puedan ser prácticamente servidas por dicho desvío, las que contribuirán con una parte' equitativa del costo original, según lo determine la Comisión. Este desvío, por su naturaleza, no puede servir al público de un modo tan completo como lo hace una extensión, porque no está abierto al servicio de pasajeros y solamente alcanza la propiedad de una industria o de varias industrias; pero no por esta razón su uso deja de ser menos público, en lo que respecta a esta industria o a las varias industrias a las cuales sirve, toda vez que la industria o las varias industrias son alcanzadas por el público y servidas por el conductor con toda amplitud. No puede negarse el servicio de un desvío a ninguna industria a la cual pueda razonablemente servir, con tal de que se pague una parte equitativa del costo; en otras palabras, todas las partes interesadas que puedan tener oportunidad de usar el desvío en sus negocios con el público, tienen

derecho al uso del mismo en los mismos términos equitativos. Esto debe ser considerado como uso público en su verdadero sentido, aunque no constituya precisamente un uso público de la misma calidad de una extensión de la línea principal de ferrocarril...."

No cabe negar, a nuestro juicio, a los interventores apelantes el derecho que reclaman a utilizar el desvío, en condiciones razonables. La South P. R. Sugar Co. no puede reservarse exclusivamente para sí el uso del mismo, mientras utilice y mantenga la conexión con la línea ferroviaria. Se trata de un servicio de naturaleza pública, cuya extensión a los apelantes en nada le perjudica, una vez cumplidas equitativamente las condiciones de pago proporcional exigidas por la ley. La Comisión no impone a la South P. R. Sugar Co. la obligación de mantener el desvío. Simplemente se limita a decirle a la empresa ferroviaria que se abstenga de continuar prestándole sus servicios a la querellada si ésta se obstina en negarle acceso a los interventores apelantes al referido desvío mediante el pago de la correspondiente compensación. El hecho de que los railes hayan sido tendidos a cierta distancia, muy corta por cierto, del camino vecinal no debe ser óbice para que los señores Torruella y Flores tengan acceso al referido desvío. No sería irrazonable exigir a la South P. R. Sugar Co. que acerque un poco más los railes al camino vecinal hasta llegar a su borde, ya que está tan próximo al mismo, a fin de que las personas con derecho a utilizar la servidumbre puedan tener acceso al desvío, sin penetrar en el terreno de su propiedad. Tampoco resulta irrazonable decirle a la querellada que debe permitir a los referidos señores recorrer esa pequeñísima distancia para tener acceso a los vagones del ferrocarril, en los mismos terrenos dedicados al desvío, bajo la condición de que si así no lo hiciere, no podrá seguir utilizando el privilegio que le ha sido concedido.

*Debe revocarse la sentencia apelada.*

El Juez Asociado Señor Wolf disintió.*

---

* NOTA: Véase el prefacio.